GOOD and wife, Appellants, vs. FARMERS MUTUAL INSURANCE COMPANY and another, Respondents.

*January 4—February 2, 1954.*

For the appellants there was a brief by *Brennan, Brennan & Brennan* of Milwaukee, and oral argument by *Martin J. Brennan*.

For the respondents there was a brief by *Rogers & Owens* of Portage, and oral argument by *John H. Rogers* and *Phillip Owens*.

FAIRCHILD, C. J. The appellants call attention to the fact that a husband of one of the jurors was insured by the Farmers Mutual Insurance Company, one of the respondents, and that five of the jury were policyholders in the same company. We find no serious claim or indication that any juror or the jury as a whole was biased or prejudiced. The rule in this state was stated in *Burns v. State,* 145 Wis. 373, 128 N. W. 987, that a juror's incompetency does not exist, necessarily, as a matter of law, but depends upon the trial judge's determination of fact in view of all the evidence and mental characteristics of the juror as disclosed by his presence in court and manner of testifying. The case of *Reynolds v. United States,* 98 U. S. 145, 156, 25 L. Ed. 244, was referred to, and the following doctrine was approved:

"No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror

had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

Upon the *voir dire* the following occurred. Mrs. Leonard Hein testified:

"We have a policy of 'insurance in the Farmers Mutual Insurance Company of Madison. We have had it for fourteen years.
"Mr. Brennan: I think the juror should be excused.
"Court: No, I don't think so.
"Mr. Brennan: A policy owner?
"Court: I don't know any reason why she should be excused so long as she can qualify and say she is not biased or prejudiced by that."

Mrs. Hein also testified: "The fact that the Farmers Mutual at Madison is a defendant would not tend to prejudice me one way or another in the trial. Being a policyholder would not affect me at all. My husband owns the car and he's got the insurance."

Others who might be regarded as similarly situated with respect to policies were accepted by the court; one was stricken.

Consideration was given to this matter, and the trial court was satisfied that each juror was competent and fair. We cannot find that prejudicial error was committed, or that the jurors were not qualified to act. The practice of trying the qualifications of jurors to the court is the accepted one, and the ruling is not reversible except when it appears that there has been an abuse of discretion. *Dishmaker v. Heck,* 159 Wis. 572, 577, 150 N. W. 951.

The evidence amply sustains the verdict. Appellants were guests in respondent Russell's car. The only question to be resolved is whether Russell failed to exercise ordinary care not to increase the danger to be anticipated by the guests in

entering the car. The conclusion reached below is that Russell's conduct matched up to the degree of care required of one acting under the circumstances confronting him and the appellants. This will appear from a review of the evidence.

Mrs. Good was in the back seat with four-year-old Barbara. Her testimony is to the effect that "Barbara was up and down; it's hard for these little folks to sit so long. . . . Mr. Russell told her she should sit down. . . . If she wanted to stand up she would. I was in the back seat and I sat right next to the door." At the critical time, she testified, "The door swung out and she was hanging on the door. I called to Mr. Russell. The stop was so quick, it seemed sudden to me. It threw me out. I just went out, the child ahead of me." The witness was asked, "Were you trying to help the child at the time he stopped?" and she answered, "Well, it's natural that a person would try to assist her. But she was out I think by that time but I saw her hanging on the door. I think I tried to reach for her and then he stopped and I went out." Roman Good, the other guest and appellant, testified, "My wife was looking after Barbara in the back seat. You can take it that way." There is also the following testimony by Mrs. Good: "Mr. Russell told Barbara to sit down quite often, because she was up and down all the time. I asked her to please sit down. She sat in the corner next to the door. When she was standing up, a person never knows, the door might of come open, and I didn't like to have her standing there, so I told her 'No.' "

The restlessness or mischievousness of the child was known to appellants, and particularly was this true as to Mrs. Good. Added caution from the father would not have made already obvious possibilities more apparent. Respondent was driving with due care for all concerned when Mrs. Good's cry brought to his attention the peril of his child. Then, to avoid seriously injuring or killing the child, he took measures to slow and stop the car. Under these facts

the jury had the right to conclude that respondent was confronted with an emergency so that the manner in which he stopped his car did not constitute negligence. So concluding, the jury properly found that Mrs. Good's injuries were due to unavoidable accident.

We find no error, and the order and judgment must be affirmed.

*By the Court.*—Judgment and order affirmed.