STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Judith L. KIERNAN, Defendant-Appellant.

Supreme Court

*No. 97–2449–CR. Oral argument May 6, 1999.—Decided July 8, 1999.*

(Also reported in 596 N.W.2d 760.)

For the plaintiff-respondent-petitioner the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Chad A. Lanning* and *Barry S. Cohen, S.C.*, Elkhart Lake, with oral argument by *Dennis M. Melowski*.

¶ 1. ANN WALSH BRADLEY, J. The State of Wisconsin seeks review of a published decision of the court of appeals reversing the convictions of Judith Kiernan for operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle while having a prohibited breath alcohol

concentration.[1] The State maintains five prospective jurors did not need to be removed for cause even though those prospective jurors had been part of a jury that two days earlier returned a verdict of guilty in a case involving the same defense attorney, similar facts, and the same defense theory. Because we conclude that reasonable jurors under these circumstances could not objectively set aside their opinion or prior knowledge so as to fairly and impartially decide Kiernan's case, we affirm the decision of the court of appeals.

¶ 2. Kiernan was arrested in rural Sheboygan County and charged with operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle while having a prohibited breath alcohol concentration, contrary to Wis. Stat. § 346.63(1)(a), (b) (1997–98).[2] Kiernan pled not guilty and requested a jury trial.

¶ 3. Sheboygan County calls its residents for jury duty from a computer randomized list created for that purpose. This relatively large group called for jury duty is collectively assigned to a particular branch of the circuit court for a one-month period. *See* Wis. Stat. § 756.28(2). Every case called in that branch during that month has its jury selected from the large group of jurors. Apparently this system generally works well, but problems with such a system are revealed in the unique facts of this case.[3]

---

[1] *State v. Kiernan*, 221 Wis. 2d 126, 584 N.W.2d 203 (Ct. App. 1998) (reversing judgment of Circuit Court for Sheboygan County, John B. Murphy, Judge).

[2] All further references to the Wisconsin statutes are to the 1997–98 version unless otherwise noted.

[3] Kiernan does not challenge the method that Sheboygan County employs to select its jurors.

¶ 4.   The morning of Kiernan's trial began with jury selection. The circuit court randomly selected twenty prospective jurors from its monthly allocation—twelve to ultimately serve on the jury and eight extra persons to account for the four peremptory strikes both the State and Kiernan were allotted. As the pool of twenty prospective jurors made its way into the courtroom, Kiernan's attorney recognized five members from the jury of a case he had lost two days earlier in the same branch of the circuit court.

¶ 5.   Ordinarily, as defense counsel later admitted, the reappearance of "veteran" jurors in another case tried by the same attorney would cause little, if any, concern. Here, however, Kiernan's case essentially was "deja vu all over again." It was a carbon copy of the earlier case.

¶ 6.   In both cases the State prosecuted a person for driving an automobile while intoxicated with a breath alcohol content of 0.11. In both cases the State's strongest evidence was a reading from a breathalyzer machine, the Intoxilyzer 5000, showing that the defendants' breath alcohol was in excess of the permitted legal limit. Most importantly, in both cases the theory of defense was to discredit the breath alcohol reading given by the Intoxilyzer 5000.

¶ 7.   The theory advanced in both trials was that objects in the mouth would absorb alcohol thereby rendering breathalyzer readings inaccurately high.[4]

---

[4] Apparently it is commonly known among operators of breathalyzer machines that items placed in the mouth, such as chewing gum or tobacco, can absorb alcohol and potentially skew upward the breath alcohol reading. *See* Wisconsin Department of Transportation, *Basic Training Program for Breath Examiner Specialist* F–1 (1979) (discussing residual alcohol in the mouth). From the discussions in this case between

740

While this concern has been most commonly associated with chewing gum or tobacco, both defendants wore dentures and asserted that the adhesive used to secure their dentures absorbed alcohol in a similar manner.

¶ 8. Kiernan's counsel, upon recognizing the five veteran jurors, immediately alerted the circuit court of his concern and requested that the five veteran jurors be replaced with five other prospective jurors. The circuit court apparently took his protestations under advisement and continued with voir dire. Unfortunately, it is unknown what exactly took place at voir dire because it was not recorded.

¶ 9. However, based on recorded conversations between the court and defense counsel that occurred after the jury was selected but before the trial began, we are able to discern the following information. First, defense counsel quizzed the five veteran jurors about their reliance on the Intoxilyzer 5000. One veteran juror indicated that she would trust the results of the machine unless it was shown that the breath test was administered by an unqualified person or the machine failed its own diagnostic check. Three of the other four veteran jurors agreed with that assessment. Second, the circuit court declined to remove any of the veteran jurors for cause. Third, Kiernan exhausted all of her peremptory strikes to remove the four veteran jurors who concluded that the breathalyzer machine, absent the extraordinary circumstances above, would render

Kiernan's counsel and the court, it appears as though at the first trial the officers that operated the breathalyzer machine testified that chewing gum or tobacco could affect the accuracy of the test results. Those officers indicated that to remedy this potential problem, they would not administer the test until 20 minutes had expired from the time the object was removed from the mouth.

an accurate reading. Fourth, if the court would have removed the veteran jurors for cause, Kiernan would have used her peremptory strikes to remove other prospective jurors who ultimately ended up sitting on the jury that heard the case.[5]

¶ 10.   The circuit court, in declining to remove the veteran jurors, noted that the jury selection methodology used in Sheboygan County was lawful and that Kiernan had not shown any improper discriminatory exclusion of a person or group of persons. It then expressed confidence in the ability of the citizens of Sheboygan County to be fair and impartial jurors. The court reasoned that the veteran jurors were not biased merely because they rejected the defense theory at the first trial and would likely do so again at this trial. According to the circuit court, the veteran jurors' rejection of the defense theory spoke not to their biases but to the deficiency of the theory and to the manner in which it was advanced at trial.[6] Quite simply, the cir-

---

[5] Kiernan's attorney identified two prospective jurors whom he would have removed with peremptory strikes had he not used them to remove the veteran jurors. The first was a person who had a close relative injured by a drunk driver. The second was a social worker who knew and worked with law enforcement officers in Sheboygan County.

[6] At the first trial, defense counsel did not call any expert to testify to the denture adhesive theory. He attempted to introduce some sort of report that supported his contention that denture adhesive can cause the Intoxilyzer 5000 to produce an errant reading. The court refused to allow that report to be introduced as evidence concluding that it was inadmissible hearsay.

Without the report, defense counsel advanced his theory mainly by cross-examining the officers who administered the breathalyzer test. He questioned them about their knowledge of the effects of chewing gum and tobacco as well as denture adhe-

cuit court reasoned that from the evidence produced at the first trial, the veteran jurors could do nothing but believe the breath alcohol reading from the Intoxilyzer 5000 was accurate.

¶ 11.    The jury as selected ultimately convicted Kiernan on both counts. Kiernan appealed and the court of appeals reversed.

¶ 12.    The court of appeals concluded that reasonable jurors in the veteran jurors' position could not set aside their opinions or prior knowledge and should have been removed for cause. *See State v. Ferron*, 219 Wis. 2d 481, 498–99, 579 N.W.2d 654 (1998). It reasoned that based on the record the veteran jurors expressed their disbelief of the theory advanced by the defense before they had heard the evidence in Kiernan's trial. Because they had formed opinions on the subject matter of the trial, the veteran jurors were biased and should have been removed for cause. *Kiernan*, 221 Wis. 2d at 139. Since they were not, Kiernan was forced to exercise all of her peremptory strikes to correct the circuit court's error. Under *State v. Ramos*, 211 Wis. 2d 12, 24–25, 564 N.W.2d 328 (1997), this act entitled her to a new trial, even though the jury that found her guilty was fair and impartial. The State petitioned this court for review.

---

sive on the accuracy of the Intoxilyzer 5000's reading. While the officers indicated that they were aware of the effect that gum and tobacco could have on the reading, they were not aware that denture adhesive could have the same effect.

As a result, the "proof" consisted of inviting the jury to conclude that denture adhesive logically could have the same effect on the breathalyzer's results as chewing gum or tobacco. Defense counsel utilized the same methodology in Kiernan's trial.

¶ 13. Two years ago, this court concluded that a defendant forced to exercise peremptory strikes in order to correct a circuit court's error in voir dire impermissibly deprived the defendant of an important statutory right. *Ramos*, 211 Wis. 2d at 24–25. The deprivation warranted reversal of the conviction and a new trial even though the jury that ultimately heard the case was in all respects impartial. *Id.* Since that time, this court has faced a number of juror bias cases where the issue has not been whether the defendant was convicted by an impartial jury but whether court errors in the jury selection process entitled the defendant to a new trial. *Ferron*, 219 Wis. 2d at 498–99; *State v. Erickson*, 227 Wis. 2d 758, 772–73, 596 N.W.2d 749 (1999); *State v. Mendoza*, 227 Wis. 2d 838, 861, 596 N.W.2d 736 (1999). This is another such case.

¶ 14. We recently noted that three types of bias can exist. *State v. Faucher*, 227 Wis. 2d 700, 716–17, 596 N.W.2d 770 (1999). The first and least common is statutory bias. This category of bias derives from Wis. Stat. § 805.08 and declares as a matter of law that certain categories of persons shall be removed as jurors "regardless of his or her ability to be impartial." *Faucher* at 717. Statutory bias is a conclusion of law premised on the belief that certain relationships are so inherently prone to partiality that an individual case-by-case inquiry is not worth the time or effort. *See Dennis v. United States*, 339 U.S. 162, 181 (1950) (Frankfurter, J., dissenting) ("if the circumstances of that class in the run of instances are likely to generate bias. . .it would be a hopeless endeavor to search out the impact of these circumstances on the mind and judgment of a particular individual").

■

¶ 15.   The second type of bias is termed subjective bias. This category of bias inquires whether the record reflects that the juror is a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the juror might have. *Ferron*, 219 Wis. 2d at 498; *see also State v. Delgado*, 223 Wis. 2d 270, 282, 588 N.W.2d 1 (1999). Discerning whether a juror exhibits this type of bias depends upon that juror's verbal responses to questions at voir dire, as well as that juror's demeanor in giving those responses. These observations are best within the province of the circuit court. On review, we will uphold the circuit court's factual findings regarding a prospective juror's subjective bias unless they are clearly erroneous.

■■■

¶ 16.   The third and final category of bias is objective bias. In some circumstances, bias can be detected "from the facts and circumstances surrounding the. . .juror's answers" notwithstanding a juror's statements to the effect that the juror can and will be impartial. *Delgado*, 223 Wis. 2d at 283. This category of bias inquires whether a "reasonable person in the juror's position could set aside the opinion or prior knowledge." *Ferron*, 219 Wis. 2d at 498. We give weight to the circuit court's conclusions that a prospective juror is or is not objectively biased. We will reverse its conclusion only if as a matter of law a reasonable court could not have reached such a conclusion. *Faucher*, 227 Wis. 2d at 721.

¶ 17.   Should bias exist in this case, it will rest either in the subjective or objective categories. There is no suggestion that any of the jurors should have been removed for cause because they fell into one of the

classes of statutory bias delineated by Wis. Stat. § 805.08(1).

¶ 18. Kiernan's contention that the veteran jurors should have been removed for cause because they displayed subjective bias is also problematic largely for one reason: the voir dire proceeding was not recorded. As noted above, subjective bias is based on the juror's responses and demeanor at voir dire. Even with a transcript, an appellate court is at a disadvantage to gauge subjective bias because the demeanor and sincerity of the juror are difficult to convey in the paper record of a proceeding. *Ferron*, 219 Wis. 2d at 509–10 (Bradley, J., dissenting). Take away the transcript and an appellate court's disadvantage increases exponentially.

¶ 19. Without a transcript this court has no way of knowing exactly what was said at voir dire and, absent specific findings by the circuit court, has no way of knowing that court's impression of the jurors. Here, the circuit court's and Kiernan's summaries of the events at voir dire, while helpful to paint a picture of the voir dire in broad strokes, insufficiently furnish the detail necessary to undertake effective appellate review on subjective bias.

¶ 20. As a result, the outcome of this case will hinge on an objective determination, whether the record reflects that reasonable people in the position of the veteran jurors could set aside their prior opinions or knowledge and judge Kiernan's case solely on the evidence presented at her trial. *Ferron*, 219 Wis. 2d at 498. Answering this question requires us to decide essentially two issues.

¶ 21. First, must veteran jurors categorically be removed for cause as a matter of law from subsequent trials with facts and issues that are nearly identical to the initial trial? We conclude that they do not need to be removed for cause as a matter of law. Second, even though veteran jurors as a class need not be removed for cause, did the circuit court err in not removing these jurors for cause because the record reflects that these particular veteran jurors were objectively biased? In this case, the circuit court could reach only one conclusion. We must reverse the decision of the circuit court because we determine as a matter of law the court could conclude only that the veteran jurors were objectively biased.[7]

¶ 22. The overwhelming majority of jurisdictions, both state and federal, have concluded that jurors who serve on another jury involving similar facts and issues need not categorically be removed for cause solely on that basis. *See, e.g., United States v. Garcia*, 936 F.2d 648, 652 (2d Cir. 1991); *United States v. Carranza*, 583 F.2d 25, 28–29 (1st Cir. 1978); *United States v. Riebschlaeger*, 528 F.2d 1031 (5th Cir. 1976) (per curiam) (collecting cases); *United States v. DeMet*, 486 F.2d 816, 819 (7th Cir. 1973), *cert. denied*, 416 U.S. 969

---

[7] The State contends that the lack of a voir dire transcript means that we must assume that the veteran jurors maintained that they could be impartial and the circuit court believed them. We agree and have done so. However, the State seems to imply that this ends the inquiry.

The State fails to appreciate, however, that our objective analysis presupposes that such assurances are present. The purpose of the objective analysis is to probe beyond what a juror asserts in order to examine whether reasonable jurors could actually act in the manner the jurors stated they would act.

(1974); *Ramos v. United States*, 12 F.2d 761 (1st Cir. 1926); *Kirkland v. State*, 786 S.W.2d 557, 561 (Tex. Ct. App. 1990). This court has concurred with this position insofar as veteran jurors need not be removed for cause when called to decide multiple cases with similar issues and identical witnesses.[8] *State v. Boutch*, 60 Wis. 2d 397, 403–04, 210 N.W.2d 751 (1973).

¶ 23.   Moreover, we have been quite hesitant to create classes of persons that are per se excluded from jury service. *State v. Louis*, 156 Wis. 2d 470, 479, 457 N.W.2d 484 (1990)(law enforcement officers); *McGeever v. State*, 239 Wis. 87, 96–97, 300 N.W.2d 485 (1941) (part-time employee under the supervision of the district attorney and sheriff); *State v. Olson*, 179 Wis. 2d 715, 720, 508 N.W.2d 616 (Ct. App. 1993) (victims of sexual abuse). *See also Nolan v. Venus Ford, Inc.*, 64 Wis. 2d 215, 225, 218 N.W.2d 507 (1974); *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 626, 79 N.W.2d 249 (1956); *Good v. Farmers Mut. Ins. Co.*, 265 Wis. 596, 598–99, 62 N.W.2d 425 (1954); *but see State v. Gesch*, 167 Wis. 2d 660, 666–67, 482 N.W.2d

---

[8] This is to be contrasted with the same juror serving on a subsequent jury involving the same defendant where the same issues are at issue. *French v. State*, 85 Wis. 400, 406–08, 55 N.W. 566 (1893) (multiple service a "very grave error"); *but see Schissler v. State*, 122 Wis. 365, 378–80, 99 N.W. 593 (1904) (multiple service constitutionally permissible), *overruled in part on other grounds, Boehm v. State*, 190 Wis. 609, 209 N.W. 730 (1926). We note, however, that even among those jurisdictions that do not require a juror to be removed for cause when called to serve on a similar case involving a different defendant, many reach a contrary result when the additional case involves the same defendant. *See* Annot., *Juror's Presence at or Participation in Trial of Criminal Case (or Related Hearing) as Ground of Disqualification in Subsequent Criminal Case Involving Same Defendant*, 6 A.L.R.3d 519, §§ 9–13 (1966).

99 (1992) (relatives of witnesses categorically excluded from sitting on the jury). As a result, we will not categorically conclude that a veteran juror is objectively incapable of being fair and impartial in a subsequent case where the issues and facts are similar.

¶ 24.   Rather, a party seeking to have that veteran juror removed for cause will need to make an individualized showing that the particular juror is objectively biased.[9] Here, Kiernan has made such a showing. We must reverse the circuit court because as a matter of law a circuit court acting reasonably could not arrive at the conclusion that these veteran jurors were fair and impartial.

¶ 25.   We arrive at this conclusion based on the veteran juror's statement at voir dire, as summarized by defense counsel and the circuit court. In the discussion on the record of Kiernan's motion to the court, defense counsel summarized what one of the veteran jurors had stated in voir dire. The gist of the statement was that the juror believed that the Intoxilyzer 5000's readings would be correct unless it could be shown either that the machine was operated by an unqualified person or that the machine failed its self diagnostic

---

[9] The State contends that the court of appeals' opinion obligates a circuit court to remove a juror to "avoid[ ] the appearance of juror bias." *Kiernan*, 221 Wis. 2d at 142. We are not convinced that the pertinent court of appeals' language need be read as a departure from our well-settled law. While circuit courts may remove jurors to avoid the appearance of bias, the circuit courts are obligated to remove for cause only those jurors who are indeed biased. *State v. Ramos*, 211 Wis. 2d 12, 29–30, 564 N.W.2d 328 (1997) (Abrahamson, C.J., concurring) (citing *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956)).

check. Three other veteran jurors concurred in this judgment.

¶ 26. Due process requires that a defendant be judged solely on the evidence adduced at the trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994). This requirement means that the jury's verdict must be supported by the evidence at trial, *Thompson v. City of Louisville*, 362 U.S. 199 (1960), may not be based on information learned about the defendant that was not produced at trial, *Irvin*, 366 U.S. at 725–26, and may not be based on pre-existing opinions on the issue put before the jury in the case, *see United States v. Haynes*, 398 F.2d 980, 985–87 (1968).

¶ 27. Here the veteran jurors opined that they would conclude that the Intoxilyzer 5000 gave an accurate reading unless one of two extraordinary scenarios was presented. Their candor at voir dire should be commended; however, their candor also reveals that they had decided the case without hearing the evidence.

¶ 28. The crux of Kiernan's defense was that the breathalyzer rendered an inaccurate reading for reasons other than operator error or machine malfunction. By their own statements at voir dire, the veteran jurors had reached a conclusion on that very issue before they heard one sentence of testimony.[10] Those jurors had formed a steadfast opinion outside the confines of Kiernan's trial on the very issue they were being called upon to decide at her trial. This is the essence of bias.

---

[10] We note, however, that a juror is not required to "give unequivocal assurances" that they would be able set aside any opinion or prior knowledge. *Kiernan*, 221 Wis. 2d at 141–42. To the extent that the court of appeals' opinion can be read to require such assurances, it is in error. *State v. Erickson*, 227 Wis. 2d at 776; *Ferron*, 219 Wis. 2d at 502 n.9.

¶ 29. While we normally defer to the conclusions of the circuit court in objective bias instances, we cannot do so here. On this record, as a matter of law, the circuit court could not reasonably reach the conclusion that it reached in this case. The circuit court was obligated to remove those jurors for cause. It did not, requiring Kiernan to remove them with her peremptory strikes. Under the rule of *Ramos*, a defendant cannot be required to use peremptory strikes to correct a circuit court error because such action grants the defendant fewer strikes than the State and effectively grants the defendant fewer strikes than permitted by statute. *Erickson*, at 773.

¶ 30. In sum, veteran jurors cannot be removed for cause solely on the basis of their having served as jurors in a similar case. Rather, such veteran jurors must be shown individually to have exhibited bias in the case they are called to hear. We conclude that these veteran jurors did exhibit bias, in that reasonable jurors in their position could not set aside expressed opinions and prior knowledge relating to the veracity of breathalyzer results. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 31. ANN WALSH BRADLEY, J. (*concurring*). The dissent, having declared "great respect" for stare decisis, then ignores it. It attempts to justify this contradiction by explaining that all it wants overruled is the automatic reversal requirement of *Ramos*. The automatic reversal rule, however, is the essence of *Ramos*. I write separately to address this contradiction

and to acknowledge the limitations of the *Ramos* decision.

¶ 32. The dissent maintains that it has "great respect for the principle of stare decisis" while in the same sentence arguing that the "automatic reversal requirement" of *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), should be overruled. Dissent at 754–55. I interpret the dissent as saying that *only* the "automatic reversal requirement of *Ramos* should be overruled" and by implication suggesting that the rest of *Ramos* remain good law. The difficulty with such a proposal, of course, is that if the automatic reversal rule of *Ramos* is reversed, there remains no meaningful shred of the decision that has precedential value. Ridding this state of the automatic reversal rule can only be accomplished by ridding this state of *Ramos*.

¶ 33. A discussion of stare decisis was recently articulated in *State v. Ferron*, 219 Wis. 2d 481, 486, 504–05, 579 N.W.2d 654 (1998):

> Because we discern no sound reason either in law or public policy to do so, we also decline the State's invitation to overrule our decision in *Ramos*.
>
> . . . .
> Put simply, the ink has yet to dry on our decision in *Ramos*. Were we to overrule *Ramos*, we find it no great leap of faith to suggest that public confidence in the judiciary would be diminished.
>
> . . . .
> Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. . . .
> [A]ny departure from the doctrine of stare decisis demands special justification. . . . The path upon

which the State would have us travel is uncertain and precarious. (Citations omitted.)

¶ 34. I joined the dissent in *Ramos*. I continued that dissent in *Ferron*, a case that followed quickly on the heels of *Ramos*. I acknowledge that *Ramos* is now binding precedent. However, today's opinions more clearly delineate, and in doing so circumscribe, the significance of *Ramos*. We apply an appellate standard of review that is deferential to the determinations of the circuit court, majority op. at 745, and have narrowly defined the rule of *Ramos*. *See State v. Erickson*, 227 Wis. 2d 758, 596 N.W.2d 149 (1999).

¶ 35. The dissent should refrain from parsing stare decisis in an attempt to avoid the rule of *Ramos*. The automatic reversal rule is *Ramos* and cannot be separated from it. The dissent should acknowledge that a court cannot overrule the automatic reversal rule without overruling *Ramos* and affirm today's limitation of that decision. Accordingly, I concur.

¶ 36. N. PATRICK CROOKS, J. (*dissenting*). I dissent for the reasons stated in my dissent in *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), since this case presents a somewhat similar fact situation and is clearly controlled by the *Ramos* decision.[1]

---

[1] The facts in *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), are as follows:

During voir dire, a prospective juror responded to a question from defense counsel by stating: "Just knowing that the child was suffocated, I guess I couldn't be fair." *Ramos*, 211 Wis. 2d at 14. The juror later, unequivocally, indicated that she could not be fair. *Id.*

The defense attorney moved to strike the juror for cause, and three times requested that the court have the reporter read

¶ 37. I concluded in *Ramos*, and I conclude here, "that by using a peremptory challenge to strike a juror who should have been excused for cause" the defendant, Kiernan, "effectively exercised this challenge for the purpose it is intended—to impanel an impartial jury." *Ramos*, 211 Wis. 2d at 30.

¶ 38. In this case, *as in Ramos*, there is no claim that the defendant, Kiernan, did not receive a fair trial by an impartial jury.[2] The automatic reversal rule adopted by the majority in *Ramos*, and continued by the majority here, is contrary, I believe, to a common-sense approach. *See id.* at 24–25.

¶ 39. Where a defendant receives a fair trial with an impartial jury, why should there be a new trial? That is a penalty for trial court error which is much too severe, where there has been no violation of any constitutional right of the defendant.

¶ 40. While I have great respect for the principle of *stare decisis*,[3] the automatic reversal requirement of

back the juror's answers, in order to clear up confusion as to her responses. *Id.* at 14–15. The judge declined to do so, and denied the motion to strike the juror for cause. *Id.* at 15.

[2] The majority opinion makes it clear that the jury that found the defendant guilty "was fair and impartial." Majority op. at 743. The attorney for Judith Kiernan conceded that fact at oral argument.

The majority also points out that since the decision in *Ramos*, this is the fourth case where this court has faced the issue as to whether judicial errors in the process of jury selection required a new trial, even though the question of whether an impartial jury had decided the defendant's guilt was not involved. *See* majority op. at 744.

[3] In *Bielski v. Schulze*, 16 Wis. 2d 1, 11, 114 N.W.2d 105 (1962), this court recognized that *stare decisis* is not a straitjacket preventing a court from overruling itself, but rather a principle that allows change upon sufficient justification:

*Ramos* should be overruled. There should be a new trial only where an erroneous ruling on a challenge for cause actually resulted in prejudice to a defendant.

¶ 41.   If a biased juror actually sat on the jury, so that there was not a fair trial with an impartial jury, then a new trial is indeed appropriate. But there should not be an automatic reversal and a new trial as a result, unless that has occurred.

¶ 42.   We should return to the approach taken by this court in *Carthaus v. State*, 78 Wis. 560, 47 N.W. 629 (1891), *Pool v. Milwaukee Mechanics Insurance Company*, 94 Wis. 447, 69 N.W. 65 (1896), *Bergman v. Hendrickson*, 106 Wis. 434, 82 N.W. 304 (1900), and also taken by the court of appeals in *State v. Traylor*, 170 Wis. 2d 393, 489 N.W. 626 (Ct. App. 1992), *review denied*, 491 N.W.2d 768 (Wis. 1992).

¶ 43.   In *Traylor*, the court of appeals relied on *Carthaus* and *Pool* when it concluded, "Wisconsin's longstanding rule is that where a fair and impartial jury is impaneled, there is no basis for concluding that a defendant was wrongly required to use peremptory challenges." *Traylor*, 170 Wis. 2d at 400.

¶ 44.   In the *Ramos* dissent, we analyzed the holding of the United States Supreme Court in a case involving peremptory challenges that arose in Oklahoma.

The United States Supreme Court considered an analogous Fourteenth Amendment challenge in *Ross v. Oklahoma*, 487 U.S. 81 (1988). The Court

Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis*, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose.

indicated: "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* at 89 (internal citations omitted). Accordingly, the Court determined that a defendant's right to due process is violated "only if the defendant does not receive that which state law provides." *Id.* Applying Oklahoma law, the *Ross* Court concluded that the petitioner was required to exercise his peremptory challenge to remove the juror, and that the trial court's error constituted "grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him." *Id.* Since a biased juror was not forced upon the petitioner, the Court held that Ross has received all that Oklahoma law allowed him, and therefore his Fourteenth Amendment challenge failed. *Id.* at 89–91.

*Ramos*, 211 Wis. 2d at 31–32 (1997) (Crooks, J., dissenting).

¶ 45.   We noted, in the *Ramos* dissent, that the *Ross* Court had also considered whether there was a Sixth Amendment violation. The United States Supreme Court held: "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."[4] *Ross*, 487 U.S. at 88.

---

[4] I note that the United States Supreme Court granted a petition for a writ of certiorari in *United States of America v. Martinez-Salazar*, 146 F.3d 653 (9th Cir. 1998), *cert. granted*, 1999 WL 59872 (1999). In *Martinez-Salazar*, a majority of the Ninth Circuit court of appeals held that a defendant who was forced to cure a trial court's erroneous failure to remove a juror

¶ 46.   Where there is no constitutional violation, automatic reversal and a new trial are uncalled for, unless the erroneous ruling on a challenge for cause actually resulted in prejudice to a defendant.[5] There was no actual prejudice in this case.

¶ 47.   For all of these reasons, I respectfully dissent.

---

for cause by using a peremptory challenge, and who ultimately exhausted all of his peremptory challenges, had been deprived of his Fifth Amendment due process rights and is entitled to the automatic reversal of his conviction. *See Martinez-Salazar*, 146 F.3d at 658–59. Apparently, there is a split among the courts of appeals as to whether reversal is required in such circumstances, absent a showing of prejudice. *Compare id. and United States v. Hall*, 152 F.3d 381, 408 (5th Cir. 1998) *with United States v. Gibson*, 105 F.3d 1229, 1233 (8th Cir. 1997), *United States v. McIntyre*, 997 F.2d 687, 698 n.7 (10th Cir. 1993) *and United States v. Farmer*, 923 F.2d 1557, 1566 n.20 (11th Cir. 1991).

[5] I recognize that dictum in *Swain v. Alabama*, 380 U.S. 202, 219 (1965), suggests that no actual prejudice is needed. Consistent with my dissent in *Ramos*, I conclude that whatever the import this dictum might arguably have had, it has been essentially nullified by *Ross v. Oklahoma*, 487 U.S. 81 (1988). *See Ramos*, 211 Wis. 2d at 36–37 & n.4 (Crooks, J., dissenting).