# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2124-CR**

Cir. Ct. No. **2019CF1672**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

RICHARD LEO MATHEWSON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Brown County: BEAU G. LIEGEOIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 HRUZ, J. Richard Leo Mathewson appeals a judgment of conviction for repeated sexual assault of a child. Mathewson argues that the circuit court clearly erred by not finding that a juror was subjectively biased

against Mathewson, such that the juror should have been removed for cause during voir dire.

¶2     We conclude that the circuit court did not clearly err. While the juror initially expressed a generalized concern that she had a bias or prejudice in the outcome of Mathewson's case, the juror subsequently clarified that she was generally troubled by the fact that the charge at issue involved the sexual assault of a child. Upon further questioning from the court and the prosecutor, the juror ultimately reiterated that she would, in fact, do her best to listen to the evidence and follow the instructions provided if chosen to serve on the jury. Based on all of the juror's statements and her overall demeanor, the circuit court found that she understood her required duties as a juror and would sincerely perform them. On this record, and given our standard of review, Mathewson has failed his burden to establish that the juror should have been dismissed for cause as being subjectively biased.

## BACKGROUND

¶3     In June 2021, Mathewson proceeded to a jury trial on a single count of repeated sexual assault of a child. At the beginning of voir dire, the prosecutor read to the jury pool[1] the Information, which noted the charge Mathewson faced

---

[1] From the record, it appears that 42 total potential jurors were brought into the courtroom for voir dire, and we refer to all 42 of those potential jurors as the "jury pool." To better accomplish the voir dire process, counsel and the circuit court agreed to begin with a panel of 23 potential jurors from the overall number of people present, with each side then being able to exercise 5 peremptory strikes, so as to arrive at a 13-member jury, which would include 1 alternate. We refer to the 23-person subset of the jury pool as the "jury panel." The circuit court, however, expressly advised those people who were not part of the original jury panel that they

(continued)

2

and the age of the victim (between eight and nine years old at the time of the offenses), and the prosecutor also read a list of his anticipated trial witnesses. No additional information regarding the underlying allegations against Mathewson— including the particular circumstances of the alleged sexual assaults—was disclosed to the jury pool at that time.

¶4      The circuit court then asked the jury panel, "Does anyone feel that they have any feelings of bias or prejudice based on what you know so far?" In response, several prospective jurors raised their hands. While the circuit court instructed the panel on the presumption of innocence and the State's burden of proof, several prospective jurors continued to indicate that they could not be fair, impartial and unbiased, and the circuit court proceeded to individually question each of those jurors in chambers. Based on the statements those potential jurors made during those conversations—which statements concerned only the fact that the charge at issue involved the sexual assault of a child—the court excused five of them for cause.[2]

¶5      The circuit court then replaced the five excused panelists from the jury panel with others in the jury pool, and then asked, "[D]oes anybody have a feeling of bias or prejudice in the outcome of this case?" Juror Mary H.,[3] one of

are still participating in this process. So when the questions are asked, please listen to the question. And if you needed to give an answer to any of the questions, please remember that answer. Because if one of the jurors needs to be taken out, you might be substituted in for that person during this process here today.

[2] A sixth juror involved with the in-chambers voir dire was not struck, but he did not sit on the jury.

[3] For ease of reading, we refer to Juror Mary H. as "Mary" throughout this opinion.

3

the new panelists, raised her hand. To explore Mary's concerns, the court explained to her the "civic duty" of serving as a juror, as well as both the State's burden of proof and the presumption of innocence, before asking her, "[W]ould you be able to be fair, impartial, and unbiased as a juror?" Mary answered, "I honestly don't know."

¶6 In response, the circuit court took Mary, the prosecutor, defense counsel, and Mathewson into the court's chambers to further discuss her answers. There, the court further emphasized to Mary the State's burden of proof and the presumption of the defendant's innocence before asking, "Knowing nothing else about this case other than the charge, are you able to sit as a juror, listen to the evidence, evaluate it, and make a decision on the facts at the end." Mary first responded, "Like I said, I honestly don't know. When I hear sexual assault of a child, it breaks my heart." After acknowledging that such a feeling is common, the court pressed further, asking Mary if she could listen to the court's instructions and apply them to evidence presented in court. Mary answered, "Yeah. I know what you are saying, but I don't know. I don't know if I could. I hear that and— it's not right, but I can't help it."

¶7 At this point, the prosecutor engaged with Mary. He echoed the circuit court's comment about how people commonly react negatively to hearing about sexual assaults of children, and he inquired into whether Mary could "set aside" her "dislike for the notion of sexual assault and try to listen to the facts and make a determination about whether that actually did happen in this case." Mary answered, "I could try. I could try." When the court and the prosecutor both continued to ask Mary whether she could listen to instructions and apply them to evidence she would hear in court, Mary again answered to the effect of "I'll try."

4

¶8 In the course of this discussion, Mary acknowledged that one of the reasons she was unsure about whether she was more likely to believe the victim simply because of the nature of the allegations was that, at that time, she had yet to hear any of the facts of the case. And when the prosecutor asked her to further explain her reservations, Mary stated that she was never sexually assaulted, "but I do know that it damages the lives of the innocent. And that's—that's my feeling on it." When the circuit court advised Mary how she would be required to perform the obligation of a juror if selected, she twice responded, "I'll do my best."

¶9 Defense counsel asked the circuit court to remove Mary for cause. Counsel cited his concern that "she seemed to start from the premise that sexual assault damages lives and that's why she would have a hard time maybe following the directions" and that "it's almost like she's presuming guilt in a way." The prosecutor opposed defense counsel's request. He pointed out that Mary affirmed that she would try and "do her best"; that her indecisiveness was born, at least in part, from not yet knowing the facts of the case; and that her feelings involved more of a general dislike toward sexual assault, a feeling that virtually everyone shares.

¶10 The circuit court denied defense counsel's request to remove Mary. In doing so, the court found that Mary "underst[ood] the obligation of serving as a juror and that she's required to follow the judge's instructions." It further found that Mary "wasn't nearly as emotional as some of the previous jurors" who were questioned in chambers, including one juror who was "basically crying." The court expressly found that

> it was significant [Mary] stated she didn't know [if she would follow the instructions and apply them to the

> evidence] and then acknowledged that she doesn't know because she doesn't know any of the evidence either. So I think that is significant to her ability to be impartial and unbiased.

The court further recognized that Mary agreed that "she is going to do her best," which the court considered is "what probably 99 percent of people would say from the community when they come onto the jury."

¶11 Mathewson's counsel did not later exercise a peremptory strike to remove Mary, and she served on the jury. The jury found Mathewson guilty of repeated sexual assault of a child. The circuit court entered a judgment of conviction based on that verdict and later sentenced Mathewson to 15 years of initial confinement followed by 10 years of extended supervision. Mathewson now appeals.

## DISCUSSION

¶12 Mathewson argues that the circuit court erred by denying his request to strike Mary for cause. He contends the record establishes that Mary was subjectively biased against him because she "indicated in open voir dire that she felt she was biased or prejudiced about the case," given that it involved the alleged sexual assault of a child, and then "never once told the [circuit c]ourt she could set aside any bias and decide the case fairly." Accordingly, Mathewson contends, Mary was unable to serve as an impartial juror and give him the fair trial to which he was entitled.

¶13 "The Sixth Amendment of the United States Constitution and [a]rticle I, [s]ection 7 of the Wisconsin Constitution guarantee criminal defendants the right to an impartial jury." *State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421 (footnotes omitted). To be impartial, a juror must be

"indifferent" and capable of basing his or her verdict upon the evidence developed at trial.[4] ***Irvin v. Dowd***, 366 U.S. 717, 722 (1961). The seating of even one biased juror is a structural error requiring reversal. ***United States v. Martinez-Salazar***, 528 U.S. 304, 316 (2000).

¶14 Courts presume that prospective jurors are impartial, and "[t]he party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias." ***Funk***, 335 Wis. 2d 369, ¶31. In Wisconsin, there are three types of prospective juror bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. ***State v. Lepsch***, 2017 WI 27, ¶22, 374 Wis. 2d 98, 892 N.W.2d 682; ***State v. Faucher***, 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999).

¶15 Here, Mathewson alleges only that Mary was subjectively biased. A prospective juror's subjective bias "is revealed through the words and the demeanor of the prospective juror." ***Faucher***, 227 Wis. 2d at 717. "[I]t refers to the prospective juror's state of mind," which means the bias will "most frequently … only be revealed through his or her demeanor." ***Id.*** at 717-18. "A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." ***State v. Theodore Oswald***, 2000 WI App 2, ¶19, 232 Wis. 2d 62, 606 N.W.2d 207 (1999).

---

[4] The requirement that a juror be "indifferent" is also codified in WIS. STAT. § 805.08(1) (2023-24). The statute requires the circuit court to examine under oath each person who is called as a juror to discover if he or she "has expressed or formed any opinion, or is aware of any bias or prejudice in the case." ***Id.*** The statute further directs that "[i]f a juror is not indifferent in the case, the juror shall be excused." ***Id.***

¶16 Whether a prospective juror is subjectively biased turns on his or her responses during voir dire and on the circuit court's assessment of the prospective juror's honesty and credibility. *Faucher*, 227 Wis. 2d at 718. Importantly, "the circuit court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased." *Id.* Consequently, a reviewing appellate court "will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." *Id.* "A circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence." *State v. Wiskerchen*, 2019 WI 1, ¶17, 385 Wis. 2d 120, 921 N.W.2d 730. Finally, and significantly, Wisconsin law is well established that a prospective juror "is not required to 'give unequivocal assurances' that [he or she] would be able [to] set aside any opinion," *State v. Kiernan*, 227 Wis. 2d 736, 750 n.10, 596 N.W.2d 760 (1999) (citation omitted), and a juror's response of "I'll try" when asked if he or she can be impartial does not conclusively demonstrate bias, *see State v. James Oswald*, 2000 WI App 3, ¶19, 232 Wis. 2d 103, 606 N.W.2d 238 (1999).

¶17 In this case, the foregoing standards do much of the "heavy lifting" in our analysis, which, of course, is their purpose. Indeed, we start with the governing presumption in all cases of alleged juror bias—namely, the presumption that prospective jurors are impartial. *Funk*, 335 Wis. 2d 369, ¶31. Second, Mathewson, as the party challenging Mary's impartiality, bears the burden of rebutting this presumption and proving her bias. *Id.* In other words, we presume that Mary would act impartially on Mathewson's jury, and it is Mathewson who must rebut that presumption by establishing that Mary would not act impartially while serving on his jury.

¶18 Mathewson does little to engage these important principles. Nowhere in his briefs does he even mention the presumption. To the extent that Mathewson believes the presumption itself evaporated the moment Mary raised her hand to the general voir dire question regarding feelings of bias or prejudice, he is incorrect. "[W]hen reviewing a circuit court's decision on subjective bias, we do not focus on particular, isolated words the juror used. Rather, we look at the record as a whole[.]" *James Oswald*, 232 Wis. 2d 103, ¶6. It is the very fact of Mary's initial response to the general voir dire question that prompted her individual voir dire that occurred in this case. The presumption of impartiality is applied against the entirety of her voir dire.

¶19 Still, it is apparent that Mathewson is arguing, albeit impliedly, that he met his burden to overcome the presumption with respect to Mary. He principally contends that while Mary was not required to give unequivocal assurances that she would be able to set aside her noted preexisting opinion, the "problem is that [Mary] never expressed *any* belief—equivocal or otherwise—that she'd be able to put aside her feelings and decide the case fairly."

¶20 Mathewson is incorrect. He ignores the equivocal nature of Mary's overall comments with respect to *whether* she could be impartial and was sincerely willing to set aside any opinion she might have.

¶21 As an initial matter, and importantly, Mathewson overstates the degree to which Mary ever communicated that she would, in fact, be biased or have a prejudicial view of the case if selected as a juror. He sometimes declares, as a given fact, that Mary "asserted" and "admitted" her bias. At other times, he describes Mary as having "indicated" that she had a feeling of bias, which *is* the

more appropriate verb for characterizing what occurred with Mary during the general voir dire, for two reasons.

¶22    First, Mary literally "indicated" her feeling of bias by raising her hand—a response to the circuit court's general voir dire question to the jury panel on which Mathewson largely relies to rebut the presumption of impartiality.  But in her response, Mary did not state that she could not be impartial.  All she did was raise her hand to a question phrased as, "[D]oes anybody have a feeling of bias or prejudice in the outcome of this case?"  Second, and more substantively, this question-and-answer is quite different from a juror expressing a definite bias, and it did not address why Mary held that "feeling" and whether she could overcome it.

¶23    Thereafter, Mary was noncommittal as to her subjective bias status, as Mathewson himself emphasizes.  Throughout her individual voir dire, Mary never stated that she was, in fact, biased in this matter; conversely, she never stated that she was not.  Rather, Mary explained a few times during her voir dire that she simply had a negative reaction to a possible sexual assault of a child having happened.  The subdued nature of her initial statement of *potential* bias is important.  The more a prospective juror makes clear statements of being potentially biased and why he or she is biased, the more assurances from that juror are necessary to counteract such statements.  Because Mary never communicated having a clear bias, her lack of express assurances to the contrary is less problematic.  Mary simply remained equivocal regarding her ability to overcome any generalized subjective bias she may have had.

¶24    The equivocal nature of Mary's statements is readily apparent when compared to the other potential jurors who were also questioned in chambers.

10

Each of these individuals expressed particular, and strong, reasons for feeling that they would be biased against Mathewson, with the circuit court observing all of their responses. These persons were:

- A young woman who claimed she was "terrified of sexual assaults," stated she worked with kids as a swim instructor and therefore "physically can't stomach" the evidence, stated her "emotions would be too high," and specifically stated, "I don't think I can be unbiased" if a witness "tells their story and starts crying."

- A man who said he experienced, "[a]s a child, a man of similar stature hurt a friend of mine in a similar way" to that of a sexual assault of a child, who categorically stated that he would not be able to set aside that experience "to be fair and impartial in this case," and who could not "separate [his] emotions from the facts of the case."

- A woman who quickly became very emotional in proclaiming her bias, which reaction she said was "because of [an] experience that [she has] had."

- A woman who, similar to Mary, answered a lot of questions by stating that she was "trying" to "do her best," but who also disclosed that she was "a survivor of sexual assault and domestic abuse" and, further, opined that "those prior experiences would so overwhelm [her] ability to hear the evidence that [she] couldn't be fair and impartial."

- A woman who stated that "one of [her] greatest fears" was her young twin granddaughters for whom she provides care being sexually assaulted, and who was also personally "a victim of abuse," causing her

to have a visibly "quite strong" emotional and anxious reaction to the notion of serving on Mathewson's jury.[5]

¶25 Unlike the other jurors who were individually examined after making the same indication of potential bias, Mary was, and remained, equivocal in the totality of her responses to questions regarding her initial indication of "feeling" bias.[6] At most, she was candidly uncertain if she could be unbiased. She did state, however, that she would try her best to do so.

¶26 In this context, the circuit court did what it was required to do. It assessed whether, based on her answers—both what Mary said *and* how she said it—and the reasons she gave for her concern, it could find that Mary was "a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that [she] might have." *See **Theodore Oswald***, 232 Wis. 2d 62, ¶19. The court answered that assessment reasonably and in the affirmative. In doing so, and under the facts in this case, the court did not need to hear a specific statement of assurance from Mary.

---

[5] All five of these prospective jurors were struck for cause. A sixth potential juror was also questioned and expressed personalized reasons for his response to the general voir dire question about feeling bias. This person even intimated that he might not properly adhere to the circuit court's jury instructions, including the presumption of innocence and the State's burden of proof. Because this individual did not serve on the jury due to Mathewson's use of a peremptory strike, there is no appellate issue regarding his potential subjective bias. *See **State v. Lindell***, 2001 WI 108, ¶113, 245 Wis. 2d 689, 629 N.W.2d 223 (holding that a defendant's substantial rights generally "are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error").

[6] Even Mathewson's trial counsel could only muster an argument that Mary "would have a hard time *maybe* following the [circuit court's] directions because *it's almost—I don't know, it's almost like* she's presuming guilt *in a way*." (Emphasis added.) This tempered argument further shows that equivocation reigned during Mary's voir dire.

¶27    In performing its assessment, the circuit court made specific findings to support its ultimate finding that Mary was not subjectively biased. These findings are not clearly erroneous, and Mathewson fails to discredit any of them under our standard of review. Importantly, each of Mathewson's arguments attacking the court's findings suffer from the above-explained fallacy that Mary "admitted" she was biased.

¶28    First, the circuit court found that Mary understood the obligation of serving as a juror and that she was required to follow the judge's instructions.[7] This finding is supported by, among other things, Mary expressing, in her responses to a series of questions, an understanding of the need for any juror selected to serve on Mathewson's jury to be "fair, impartial, and unbiased."

¶29    Second, while Mary was uncertain of how she would "feel" after hearing all the evidence (given her distaste for the general notion of sexual assault of children), the circuit court found it significant that she stated this uncertainty was, at least in part, because she had yet to hear any facts of this particular case. The court credited this recognition on Mary's part as being "significant to her ability to be impartial and unbiased."

¶30    Third, as part of its overall assessment of Mary's demeanor, the circuit court noted that "[s]he wasn't nearly as emotional as" some of the other jurors who were questioned and excused (including one who was "basically

---

[7] Mathewson seems to take issue with the circuit court telling Mary she had a "civic duty" to be a juror. We question his concern. Citizens *do* have a civic duty to serve as jurors in cases for which the constitutional right to a jury trial attaches, provided, of course, that they are able to be fair and impartial when doing so. A court reminding a potential juror of that duty is not the least bit troublesome.

crying"). The court further credited Mary's concluding statement that "she is going to do her best" as a reasonable way for a lay person to phrase her agreement to fairly "do [her] best to evaluate the evidence and make a decision." Given that the circuit court witnessed Mary while she answered the voir dire questions, and this court did not, we cannot say that the circuit court's assessment is clearly erroneous, regardless of the fact Mary did not "express any belief that [she would] succeed," which Mathewson seems to contend is necessary. Again, we must defer to the circuit court's reasonable assessment in this regard.[8]

¶31 Because challenges to juror bias are necessarily fact specific, our foregoing conclusions stand on their own relative to existing case law. Moreover, we agree with Mathewson that some relevant distinguishing characteristics exist within the constellation of our state's prior case law on subjective juror bias. This case is but another one falling within that universe. Still, we view those cases—especially those summarized below that upheld a refusal to excuse jurors who offered more concerning or ambiguous responses than Mary did—as supporting our foregoing conclusion that the circuit court here did not clearly err.

---

[8] Undeterred by this standard of review, Mathewson contends that "while demeanor can give important context to a juror's words, here the words are plain: [Mary] never said she could be unbiased. That she spoke calmly doesn't alter the meaning of what she said (or what she did not)." We strongly disagree.

How a person sounds and acts when saying words like those at issue here—"I'll try"; "I'll do my best"; "I honestly don't know"—*does* matter. To be sure, some statements lend themselves to more universal meaning by their nature alone. But those statements are of the type that the other, struck potential jurors in this case made. *See supra* ¶24. As a reviewing court, we are required to "employ the clearly erroneous standard because the [circuit] court is in the unique position to assess the prospective juror's demeanor and tone," and we "will not second-guess these observations when all we see is a cold record." *See State v. James Oswald*, 2000 WI App 3, ¶5, 232 Wis. 2d 103, 606 N.W.2d 238 (1999). And as already explained in this opinion, to the extent Mary did not unequivocally say she could be unbiased, she also did not clearly say she would be biased.

¶32    In *James Oswald*, 232 Wis. 2d 103, ¶¶15-17, 19, this court concluded that the record supported the circuit court's decision not to strike prospective jurors who initially either stated or indicated their bias based on media coverage of the defendant's offense. Of note, these prospective jurors answered "[p]robably, yeah," "[a]s a juror I know I would have to," and "I would try to do my best," in response to whether they could set aside their previously formed opinions and base their decision on the evidence presented.[9] *Id.*, ¶¶15-17.

¶33    In *State v. Gutierrez*, 2020 WI 52, ¶11, 391 Wis. 2d 799, 943 N.W.2d 870, a prospective juror, who subsequently served on the defendant's jury, stated "I don't know if I can be impartial." Defense counsel moved to strike the juror for cause, but the circuit court did not rule on the motion. *Id.* Defense counsel did not renew the motion, question the juror further, or exercise a peremptory strike on the juror. *Id.* Based on this record, our supreme court explained that the defendant could not overcome the presumption of juror impartiality. *Id.*, ¶42.

¶34    And in *State v. Conger*, No. 2017AP860-CR, unpublished slip op., ¶¶21-23 (WI App Oct. 18, 2017),[10] we held that the circuit court did not err by determining that a prospective juror did not exhibit subjective bias. In that case, the juror initially stated she could set aside her bias and prejudice to decide the case based on the evidence, but later, during individual voir dire, stated, "I will do

---

[9] One of the jurors in *James Oswald* also initially indicated his bias but affirmatively stated he could set aside that bias and reach a decision based on the evidence presented. *James Oswald*, 232 Wis. 2d 103, ¶18. Given his affirmative statement, as opposed to the equivocal responses from the other jurors, we do not include his response in our summary of the case.

[10] An unpublished opinion that is authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b) (2023-24).

my best" when asked if she could do so based on her serving on the defendant's jury for a similar offense the previous week. *Id.*, ¶¶14-15.

¶35 In all, Mathewson has failed his burden to show that the circuit court clearly erred by not striking Juror Mary H. for cause on the basis that she was subjectively biased against Mathewson. The transcript from the voir dire proceedings, in its entirety, supports the circuit court's determination, and that is all our standard of review requires for us to affirm.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.