CARTHAUS and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*December 22, 1890 — January 13, 1891.*

CRIMINAL LAW AND PRACTICE: (*1, 2*) *Remarks by the court.* (*3, 4*) *Evidence: Medical experts: Good character.* (*5*) *Time to examine special jury list: Discretion.* (*6*) *Continuance.* (*7–11*) *Competency and conduct of jurors: Peremptory challenges: Immaterial errors.*

1. On a trial for manslaughter, a witness who was in the room when the fatal blow was struck was questioned by the prosecution as to his precise position and attitude, and, the defendants having objected, the court said: "We all know, if there was anything going on in the room, it is a very slight circumstance where a man sits. He may turn his chair or turn around. He is not fixed like a pillar of wood. The jury understand that perfectly well. It is a waste of time to try and enlighten them on that subject." *Held*, that the defendants were not prejudiced by these remarks.

2. Nor were the defendants prejudiced by a remark by the court to a witness who denied all knowledge of what was said or done by the accused and the deceased in his very presence, that "You must have seen a part of what was going on, didn't you?"

3. It having been shown that just before the affray one of the defendants had picked up a small club, a physician who had made the *post mortem* examination and had found the skull fractured was properly asked whether, in his opinion, the injury could have been caused by a blow struck by a club.

Carthaus and another vs. The State.

4. Testimony as to the defendant's good character should be confined to general reputation.
5. A special *venire* having been issued after the regular panel of jurymen had been exhausted, the court gave the defendants' attorneys but ten minutes to look over the list although they asked for longer time. *Held*, that this was not error, the matter resting in discretion and there being nothing to show that the defendants were prejudiced.
6. A continuance on account of the absence of a witness was properly refused where the affidavits stated that such witness would testify to threats made by the deceased against one of the defendants, but did not show that such threats came to the knowledge of said defendant before the killing.
7. The fact that a juror, who had been called as such on a former trial and had then been excused, is permitted to stand, and is then peremptorily challenged, does not constitute an objection to the conviction.
8. The affidavits of two persons, used on a motion for a new trial, stated that previous to the trial one of the jurors had expressed prejudice and feeling against the defendants. The said juror, on his examination on *voir dire*, had stated that he had not formed or expressed any opinion, and that he was not sensible of any bias or prejudice; and in a counter-affidavit he positively denied the statements of the other affidavits. *Held*, that the question was one of fact for the trial court, and that its decision that the juror was impartial will not be disturbed.
9. A remark by the same juror, during the trial, that some of the witnesses for the state had poor memories,— the truth of such remark being shown by their testimony,— is *held* to have been harmless and not to have amounted to misconduct.
10. A juror, having stated on the *voir dire* that he did not know the defendants and that he had no feeling or prejudice against them, was qualified, although it is shown, on motion for a new trial, that one of the defendants, acting as constable, had years before served processes upon him,— his affidavit stating that he had forgotten that fact.
11. The fact that the defendants were obliged to challenge peremptorily disqualified jurors will not work a reversal, where it does not appear that they were prejudiced thereby.

ERROR to the Circuit Court for *Sheboygan* County.

The facts will sufficiently appear from the opinion.

The cause was submitted for the plaintiffs in error on the

brief of *Seaman & Williams*, of counsel, and for the defend-
ant in error on that of the *Attorney General* and *L. K.
Luse*, Assistant Attorney General.

COLE, C. J.   So many exceptions are relied on for a re-
versal of the judgment in this case that each exception can
only be noticed in the briefest manner, in order to avoid
extending this opinion to an inordinate length.   Besides,
the questions raised by the exceptions are not of a charac-
ter which would justify any elaborate discussion of them.
The particular points are covered by the grounds assigned
on the motion for a new trial, and they will be considered
in the order they are stated in the motion.

The plaintiffs in error and defendants below were charged
with the offense of manslaughter in the first degree.   The
cause was tried three times, and on the last trial in Novem-
ber, 1889, they were convicted of manslaughter in the fourth
degree.   As intimated, a motion was made for a new trial,
which was denied.   The first specific ground relied on on
the motion was the following language, which was used by
the court, upon an objection by the defendants' counsel to
a question put by the district attorney to the witness
Orlopt: " We all know, if there was anything going on in
the room, it is a very slight circumstance where a man sits.
He may turn his chair or turn around.   He is not fixed like
a pillar of wood.   The jury understand that perfectly well.
It is a waste of time to try and enlighten them on that sub-
ject."   We are unable to see how this remark of the trial
judge could have prejudiced the defendants.   There seem
to have been a great many immaterial and irrelevant ques-
tions asked the witness on the part of the prosecution re-
specting the precise place he occupied at a table in the
saloon, when the difficulty occurred in which it was claimed
the deceased was struck a fatal blow by one of the defend-
ants.   The question was asked the witness if he was sitting

at the north side of the table looking over to where the scuffle, which had been described, took place, and over which shoulder the witness looked; and the judge evidently thought there was no necessity for going into such minute details in the matter, and we fully agree with him in that view. We think the attorney general is right in saying that if the remark of the judge produced any impression on the minds of the jury, it was quite as likely to be favorable as unfavorable to the defendants. But we do think the remark was quite harmless, and could not possibly have injured the defendants. And the same observation may be made in respect to the language which the judge used to the witness Otto Schneider, who did not know anything about what was said and done by the accused and the deceased in his very presence: "You must have seen a part of what was going on, didn't you?" How this remark could have prejudiced the defendants, we are unable to understand, and the objection to it seems frivolous.

The record does not sustain the next objection, that the district attorney read the testimony purporting to have been taken at the coroner's inquest in the hearing and presence of the jury. He asked the witness Schneider if he had not testified at the inquest as follows: "That I did'nt see what occurred there. I was reading a newspaper all the while." The question was asked for the purpose of refreshing the mind of the witness, who said that he did not testify so at the coroner's inquest, nor to anything of that kind.

The next objection is that the court erred in permitting the district attorney to ask the medical witness, Dr. Morehouse, this question: "In your opinion, could this injury have been caused by a blow struck by a club, for instance the small end of a base-ball club, about eighteen inches long, in the hands of some person?" The witness Orlopt had testified that the defendant *Carthaus*, at the time of

the affray, went back of the bar in the saloon, and picked up a small club, which he kept for breaking ice; that immediately thereafter a scuffle took place between the deceased and the defendants in the room in front of the bar, and witness heard a dull sound, and the deceased fell and sank onto the floor at once. Dr. Morehouse was one of the physicians who made the *post mortem* examination of the deceased, and testified as to finding the skull fractured, which he thought was the cause of death. The competency of the witness is not questioned, and it is clear that he could give his opinion, as a medical expert, as to the cause of death. Prof. Greenleaf says: "The opinions of medical men are constantly admitted as to the cause of disease or of death, or the consequences of wounds, . . . and as to other subjects of professional skill." 1 Greenl. Ev. § 440. This rule has been followed in this state (*Boyle v. State*, 61 Wis. 448), and it is amply sustained by authority. This disposes, likewise, of the objection to the question asked Dr. Beckel, who was one of the physicians that made an autopsy, and who described the fracture of the skull and wounds upon the head. His testimony was admissible upon the same ground as that of the other medical witness.

There was no error in the ruling of the court on the cross-examination of the witness August Smith, who was produced to prove the good character and general reputation of the defendants in the neighborhood where they lived. The court confined the examination to the general reputation of the defendants, and would not permit the prosecution to inquire as to any specific act or thing about which they had been charged or accused. This, surely, was not prejudicial to the defendants, thus to restrict the examination.

Another error assigned is that the court did not allow the defendants a sufficient time to inspect and examine the list of jurors summoned on the special *venire*. A special *venire*

was issued after the regular panel of jurymen had been exhausted, and the defendant's counsel asked time to examine the list of names before proceeding with the trial. It was claimed that there were names on the special *venire* which had been stricken off, or of persons who had already tried the case or attempted to do so. The court gave the defendants' attorneys ten minutes to examine the list. It was said that this did not give a sufficient time to go through the list, and an exception was taken to the ruling of the court on that point. The granting of time to examine the list was plainly a matter resting in the discretion of the court. There is nothing to show that the defendants were prejudiced by the refusal of the court to give a longer time for the examination of the list on the special *venire*. The jurymen were all sworn on *voir dire*, and examined fully as to their qualifications to sit in the cause. The objection that the list included jurors who had been present on former trials was obviated by the fact that such jurors were excused by the court. They certainly did not sit in the trial of the cause.

Another error relied on is the refusal of the court to grant a continuance on account of the absence of one Theo. Bauman, who, it is said, was a material witness for the defendants. In their affidavits the defendants said, in substance, that they had used due diligence to prepare for the trial by subpœnaing their witnesses; that the state subpœnaed its witnesses, and among them Bauman, who would swear that, prior to the commission of the alleged offense with which they were charged, the deceased was taken by Bauman, who was a peace-officer, from the saloon of *Carthaus* for disorderly conduct and threats against *Carthaus*, and that afterwards the deceased informed Bauman that he was going to *Carthaus* to smash his (*Carthaus'*) shanty; and that Bauman had left the state suddenly, and would not return thereto within six months; that they had no reason to

believe Bauman would be absent from his residence at the time of trial; and that he was the only witness by whom they could prove the facts above stated. It is not claimed or stated that these threats, whatever they were, were ever communicated to or came to the knowledge of *Carthaus* before the alleged offense was committed; therefore, we do not think the testimony was material, and it was not error for the court to compel the defendants to proceed to trial without such testimony.

Another error assigned is that the court permitted A. J. Lumsden to stand as a juror, after it appeared from his examination on the *voir dire* that he had been previously called as a juror at the former trial of the cause, and had been excused by the court. It appears from the record that Lumsden had been summoned as a juror on the first trial, but did not sit in the cause, being excused by the court. On this trial he was peremptorily challenged by the defendants, and set aside. We think he was qualified to try the cause, but as he did not there can be no objection to the conviction on that ground. The juror said, in his *voir dire*, that he had read in the newspapers about the defendants being charged with the commission of the offense, and had talked about it some, but not with any one who claimed to have any personal knowledge of the facts, and he thought he could try the case fairly upon the evidence; and that what he had read or heard about the matter would not influence his judgment in determining upon the verdict.

Another error assigned is that George Allen, who sat as a juror and participated as such in the trial of the cause and the rendition of the verdict, was not an impartial and proper juror in this, that he had, previously to said trial, expressed his prejudice and feeling against these defendants, as shown by the affidavits of one Kalk and one Osthelder, and that he, in answer to his examination on *voir dire*, denied any expression of feeling, or that he was in any way prejudiced

against the defendants or either of them; and further, for his misconduct during the trial of said action, while he was sitting as a juror therein, in conversing or expressing his opinion as to certain witnesses and matters occurring on the trial, to the prejudice of the defendants. If these state- ments in the affidavits as to what Mr. Allen had said about the case and the guilt of the defendants, are to be believed, it is clear that he was not an impartial juror. It is a fundamental maxim of our criminal jurisprudence that a person put upon trial for the commission of a crime is entitled to a fair and impartial jury to determine his guilt. And this principle the courts will carefully uphold against all violation, and see that it is enforced in all its integrity and sacredness. Were we satisfied that the juror had expressed the opinions imputed to him, we would certainly reverse the judgment. But Mr. Allen was sworn on *voir dire*, and stated that he had not expressed or formed any opinions as to the guilt or innocence of the defendants; that he was not sensible of any bias or prejudice for or against them, and knew of no reason why he could not act as an impartial juror in the case. And in his affidavit, made and used on the motion for a new trial, he positively denied ever having used the language or words imputed to him in the affidavits of Henry Kalk and Joseph Osthelder, prior to the trial, and says he had no knowledge that the defendant *Carthaus* kept a saloon in Plymouth, further than a general knowledge that the deceased was supposed to have been killed in a saloon at that place. The question thus presented by the conflicting statements in the affidavits was one of fact for the trial court, who obviously determined in favor of the credit and truthfulness of the statements made by Allen. The trial judge had witnessed the conduct of Allen on the trial, and we do not feel justified in holding that he decided against the truth of the matter. *Grottkau v. State*, 70 Wis. 462. The remark, which he admits he made in the drug-

store, that some of the witnesses of the state had poor memories, was harmless. Its truth is fully borne out by the testimony. Our conclusion is that he was an impartial juror and was competent to sit in the case.

The objection taken to the juror John N. Thomas, it seems to us, has no weight. That juror had said on *voir dire* that he was not acquainted with the defendants and knew nothing about them. It was shown, by affidavits and documentary evidence, that he had been served several times, years before, with legal processes by the defendant *Witte*, acting as marshal or constable. This fact, he stated in his affidavit, he had forgotten; and he repeated the statement that he did not know either defendants, and had no personal feeling or prejudice against them or either of them; and that he was governed in his deliberation upon the verdict wholly by the evidence adduced and by the law as given by the court. We think the juror was qualified to sit in the case.

As to the objection to the juror Wayland Chaplain, we think it has no merit. He was peremptorily challenged by the defendants, and set aside. It is said the defendants should not have been put to their peremptory challenges as to this juror and Lumsden, because in so doing they exhausted their peremptory challenges; but it does not appear that they were prejudiced in any way by that fact. A fair and impartial jury was impaneled, and what more could the defendants ask for?

Some exceptions were taken to certain portions of the charge of the court, and to its refusal to give certain instructions asked on the part of the defendants. So far as the special requests are concerned, all the law which they contained, applicable to the evidence, was given in the general charge. The charge is long, and is sufficiently favorable to the defendants, and fairly submits the case on the testimony to the jury. We do not deem it erroneous, even

in the portions excepted to. It certainly does not appear from the testimony that the deceased was making any attack upon either of the defendants which made it necessary for them to inflict any injury upon him in self-defense. He appears to have been quite intoxicated when he came into the saloon, and if he was abusive in his language and insisted in helping himself to more liquor, they could, with lawful efforts, have put him out doors without doing him any injury. There was surely no necessity of using violent means or resorting to unlawful acts to protect themselves or their property from harm, considering the condition he was in. He was incapable of making any forcible resistance or of doing any great corporal hurt to any one. If the whole charge is considered together, it will be found, we think, unobjectionable. It was proper for the court to urge a conscientious agreement of the jury upon a verdict, if possible. It was the third time the case had been tried, and such an admonition was not out of place.

We have thus noticed all the material objections taken to the proceedings on the trial, and think the conviction was warranted by the proofs in the case.

*By the Court.*— The judgment of the circuit court is affirmed.