STATE of Wisconsin, Plaintiff-Respondent,

v.

Freddie B. TRAYLOR, Defendant-Appellant.†

Court of Appeals

*No. 91-2702-CR. Submitted on briefs May 22, 1992.—Decided July 15, 1992.*

(Also reported in 489 N.W.2d 626.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John T. Wasielewski* of *Wasielewski & Erickson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J.  Freddie Traylor appeals his conviction of first-degree sexual assault for allowing a six-year-old girl to have oral contact with his penis. He argues that his counsel was ineffective at *voir dire* for failing to ask follow-up questions of jurors who admitted possible bias and for using peremptory challenges rather than

moving the court to strike these jurors for cause. He also argues that counsel failed to object to the introduction of other wrongs evidence in the form of reports of his minor infractions of jail rules. Finally, he argues that counsel's failure to object to the state's insertion of the word "allowed" in the jury instructions on sexual contact resulted in changing the intent element of the crime. He claims that this permitted the jury to reach a guilty verdict if it found that he passively *allowed* the sexual contact rather than requiring it to find that he affirmatively *caused* the contact.

Traylor made no showing that the final jury panel was biased or forced upon him. Therefore, he has not demonstrated prejudice by counsel's actions during jury selection. We also conclude that he was not prejudiced by the state's introduction of other wrongs evidence because the jail infractions were so trivial that it is unlikely they influenced the jury. Finally, we conclude, as a matter of law, that an adult who *permits* a child's sexual contact shows the requisite purpose of sexual arousal or gratification and thereby fulfills the intent element of the crime. For these reasons we affirm the judgment of conviction.

In January 1990, Traylor (age 20) spent the night at the home of his cousin, Dorothy M. In the house were Dorothy's daughters, Precious (age 15) and Christina (age 10), and Dorothy's son, Hilton (age 5). Dorothy was also babysitting three other children—two girls, Twanika (age 10) and Javasha (age 6), and a boy, Keith (age 2). While Dorothy was studying in her bedroom, the children and Traylor were in another bedroom where Javasha put her mouth on Hilton's and Keith's penises and then also on Traylor's penis. Other facts relating to the charge will be stated as necessary.

396

The ultimate question in ineffective assistance of counsel claims is one of law, which this court reviews *de novo* without deference to the trial court's conclusion at the *Machner* hearing. *See State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986); *State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908–09 (Ct. App. 1979).

The test of ineffective assistance of counsel on each of the three issues Traylor raises is the familiar two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Traylor must show both deficient performance of counsel and prejudice to his defense resulting from the deficient performance. *See State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). A showing of deficient performance is not enough to obtain a reversal because, to rise to the level of a constitutional violation, the deficient performance must undermine our confidence in the fairness of the trial and the reliability of the result. *See id.* at 642, 369 N.W.2d at 718.

However, the defendant is not required to show prejudice beyond a reasonable doubt or even by a preponderance of the evidence. *Id.* If the defendant can show there is a reasonable probability that the proceeding would have been different but for counsel's errors, the conviction will be reversed because such a reasonable probability is sufficient to undermine our confidence in the reliability of the proceedings. *Id.* at 642, 369 N.W.2d at 719.

We initially discuss the juror selection issue. Defense counsel asked members of the panel whether they had discussed criminal cases with any relatives or friends who are police officers. A potential juror named Schoenecker answered that she had had such discussions

and thus did not think she could be impartial or fair to a defendant because she considered a defendant guilty "right away." The trial court intervened, telling her that jurors would be instructed to follow the law regardless of their beliefs and to presume the defendant innocent unless the state proved guilt beyond a reasonable doubt. The court asked her if she would be able to follow those instructions. She answered that she "would try."

Defense counsel then asked the panel if anyone felt that a person who was arrested had probably done something wrong. A Ms. Swoboda raised her hand. Defense counsel asked her two follow-up questions. The court did not intervene to question this juror.

Next, counsel addressed the defendant's right to remain silent and asked how many jurors thought the defendant should take the stand to give his version of what occurred. A Mr. Perkins said, "If he's trying to prove that he's not guilty of anything I think it would be in his benefit to try to help himself." Counsel asked him whether he would keep the defendant's failure to testify in his mind during jury deliberations. Perkins answered that it would depend on the rest of the evidence he heard.

Similarly, a Mr. Battisti said that if there is a lot of evidence against the defendant, he should tell his version. And a Mr. Held said, "I'm thinking myself if I were ever charged with something like this and I felt I was charged falsely I'd want to scream and holler at the top of my lungs to anyone that would hear me that I wasn't guilty." Schoenecker also indicated a problem on this score, saying she would feel that the defendant was probably hiding something if he did not want to speak out. Defense counsel asked no follow-up question of Battisti or Held and did not ask Schoenecker whether she could set aside her desire to hear from the defendant if the

court instructed her to do so. Counsel used peremptory challenges to strike all the jurors except Perkins.

Traylor argues that his counsel was ineffective for failing to ask follow-up questions of the jurors who admitted bias and for failing to move the court to strike these jurors for cause. The implicit argument Traylor seems to be making is that he would have had an entirely different jury panel if counsel had moved to strike these five jurors for cause because counsel could then have used his four peremptory challenges on other jurors.

We agree that trial counsel's performance relating to Schoenecker was deficient. We make this determination based upon *State v. Zurfluh,* 134 Wis. 2d 436, 397 N.W.2d 154 (Ct. App. 1986). In that case, a prospective juror said she "might not be able to be fair." Even after the trial court explained the duties of a juror, that person was asked whether she would have a problem making a fair and impartial determination of the evidence. The prospective juror answered: "I don't know . . . .. I'm afraid I might." Counsel in that case moved to strike for cause. The motion was denied. The court of appeals held that the trial court exceeded its discretion and reversed. *Id.* at 439, 397 N.W.2d at 155.

We hold that Schoenecker's answers were similar to those of the juror in *Zurfluh.* Counsel was ineffective for failing to move to strike for cause. We make the same decision regarding the other jurors. In each case, there was a failure to conclusively determine whether the juror would follow the law as instructed by the trial court instead of following his or her own concept of justice. Counsel should have asked the appropriate follow-up questions to assess whether the juror would follow the instructions of the court and, if counsel failed to receive

a satisfactory answer, should have moved to reject the juror for cause.

Nonetheless, in *Zurfluh,* no contention was made that the trial court's mistake was harmless error. *Id.* Here, the state argues that even if counsel was ineffective, this performance did not prejudice the defendant. The addition of this issue sets this case apart from the result in *Zurfluh.* The reason for this is that, under old and never overruled Wisconsin law, Traylor cannot prove prejudice unless he can show that the exhaustion of peremptory challenges left him with a jury that included an objectionable or incompetent member. *Pool v. Milwaukee Mechanics Ins. Co.,* 94 Wis. 447, 453, 69 N.W. 65, 67 (1896). Wisconsin's longstanding rule is that where a fair and impartial jury is impaneled, there is no basis for concluding that a defendant was wrongly required to use peremptory challenges. *See Carthaus v. State,* 78 Wis. 560, 568, 47 N.W. 629, 631 (1891).

There is no constitutional right to peremptory challenges; there is only a constitutional right to an impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 85, 88 (1988). Any claim that a jury is not impartial must focus not on the jurors who were removed by peremptory challenges but on the jury that actually sat in the case. *See id.* at 85–86. Where there is no showing that any of the actual jurors were biased, it would be speculative for a court to conclude that the jury would have been fairer if counsel had been allowed to preserve peremptory challenges on other, unspecified members of the jury venire. Moreover, there would be no stopping point if the deprivation of such speculative benefit, standing by itself, could establish prejudice.

Traylor argues that his actual jury did contain one biased member, namely Perkins. However, we conclude that Traylor suffered no prejudice from Perkins' presence on the jury. The belief in Perkins' bias stemmed from Perkins' statement that a defendant should testify. However, Traylor *did* testify and so cannot claim that he was prejudiced by a juror who wanted to hear his testimony. Traylor does not claim that Perkins' presence on the jury panel influenced his decision to testify.[1] Nor did he make such a claim at trial when the court discussed with him his right not to testify. We conclude that while counsel was ineffective, there was no prejudice shown.

Traylor's next challenge concerns the state's introduction of his jail conduct report. The report contained a list of fourteen infractions, such as two instances of using profanity, one instance of making abusive gestures toward the jailers, not wearing a shirt in the jail's dayroom, crossing a red line in the dayroom, trying to get an extra meal, and engaging in horseplay.

The evidence first came in during cross-examination of Traylor's character witness, James Cape. Cape had been personnel manager and president of a publishing company for twenty-five years and was a volunteer G.E.D. high school diploma tutor for jailed persons. He testified to Traylor's good character and credibility. During cross-examination, the state asked Cape whether the reports of jail conduct concerning profanity and abusive gestures would change his opinion about Traylor's character. The evidence of the jail infractions came in again

---

[1]Traylor's counsel testified at the *Machner* hearing that during *voir dire* he asked the jurors questions about whether a defendant should testify because it would affect the decision about whether Traylor should testify. However, there is no claim that Perkins' response influenced this decision.

during rebuttal when the state called a deputy from the jail who read the list of infractions from Traylor's official jail record. Finally, the evidence was mentioned in closing arguments.

Traylor argues that under sec. 906.08(2), Stats., it was improper for the state to mention the jail infractions during the cross-examination of Cape because the infractions were not probative of truthfulness. Traylor further argues that the deputy's testimony regarding the jail report was inadmissible as extrinsic evidence. *See id.*

We decline to decide whether this evidence was inadmissible and whether counsel's performance was deficient for failing to object to its admission. Given the trivial nature of Traylor's jail infractions and counsel's effectiveness in cross-examination and in closing argument, we conclude that there was no prejudice from counsel's failure to object to the evidence.

At the *Machner* hearing, Traylor's counsel testified that he thought the trivial nature of the evidence helped the defense more than it hurt and he felt he could clear up any problems in cross-examination. His cross-examination of the deputy did show how trivial these infractions were. Counsel also minimized the effect of the testimony because he made it clear that the deputy had no personal knowledge of the infractions, emphasized that none of the infractions involved sexual deviancy, and confirmed that a defendant in jail awaiting trial for a crime he said he did not commit might become frustrated and resort to some of the behavior on the list of infractions. In his closing argument, Traylor's counsel suggested that the state was grasping at anything to make the defendant look bad even though he had never had any prior problem with the law. We conclude that

the evidence of jail infractions was so lacking in persuasive value that no prejudice resulted from this evidence.

Traylor's last challenge concerns counsel's failure to object to the state's modification of the jury instruction on sexual contact. The jury was given the following instruction. The state's modification by the addition of words is indicated in italics.

> Sexual contact is any intentional touching of Javasha . . . of the penis of the Defendant, if the Defendant intentionally caused *or allowed* her to do this touching.

Traylor's counsel did not object to the instruction, indicating that he would defer to the statutory language. At the *Machner* hearing, he testified that he did not object because the defendant's position was that he did not *allow* anything to happen, that there was no contact at all.

Traylor argues that the state's modification changed the causation requirement of the crime, thus changing one of the statutory elements. *See* sec. 948.01(5), Stats. The relevant parts of the statute define sexual contact with a child as:

> any intentional touching by the complainant or defendant . . . of the complainant's or defendant's intimate parts if the intentional touching is . . . for the purpose of . . . sexually arousing or gratifying the defendant.

*Id.* Traylor contends that the standard jury instruction on this statute indicates that sexual contact with a child occurred if a "defendant caused [the victim] to do that touching." Wis J I—Criminal 2103. Traylor also cites the drafting committee's notes following the jury instruction.

> With regard to the touching of the defendant by the complainant, the instruction refers to it as a touching which the defendant causes the complainant to do. The statute does not specifically require that it be such a touching, but the Committee concluded that such a requirement is implicit.

*Id.* Traylor concludes from this that sexual contact requires an affirmative act and mere passivity is not "intentional touching" as contemplated by the statute. He further argues that an affirmative act requirement for sexual contact would be consistent with the statute on illicit sexual intercourse, which requires a penetration or intrusion "either by the defendant or upon the defendant's instruction." Section 948.01(6).

We agree with the state, however, that the defendant does not have to initiate sexual contact with a child. If the defendant *allows* the contact, that is sufficient to constitute intentional touching because it indicates that the defendant had the requisite purpose of causing sexual arousal or gratification.

Where the defendant *permits* sexual contact initiated by a child, there is a permissible inference that the defendant sanctioned it for the purpose of sexual arousal or gratification.[2] When that purpose can be inferred, the jury can find that the defendant intended to engage in sexual contact with the child. Here, the jury obviously concluded that Traylor did *allow* Javasha's sexual con-

---

[2]It is important to note that evidence must be in the record that a defendant *allowed* the touching before this inference can be raised. The mere fact of a child's touching an adult does not raise the inference. There might indeed be evidence in a specific case that the adult called an immediate halt to this activity. Absent other evidence that the event was sanctioned by the adult, the mere fact that a touching took place is not the same as "allowing" it.

tact. Therefore, he is guilty of intentional touching because he *allowed* the contact.

The instruction given by the trial court properly stated the law. Because it was not erroneous for the state to modify the standard jury instruction, it did not constitute deficient performance for trial counsel to fail to object to this modification.

*By the Court.*—Judgment and order affirmed.