GUNDRUM, J.[1]
¶ 1 K.N.L. appeals from an order terminating her parental rights to J.B.L. following a jury trial. She argues the circuit court erred in declining to strike a challenged prospective juror for cause because the prospective juror was biased. She also appeals from an order denying her claim that her trial counsel performed ineffectively in relation to how counsel handled the striking of the prospective juror. Because we agree with the circuit court that the prospective juror was not biased, we conclude the court did not err in declining to strike her for cause. Even if the court did err, however, because the prospective juror never made it on to the jury, we conclude any alleged error was harmless. We also conclude counsel did not perform ineffectively. We affirm.
Background
¶ 2 Leading into voir dire prior to the start of trial, the circuit court informed prospective jurors that the case was "a fact-finding proceeding on a petition to terminate" K.N.L.'s parental rights to J.B.L. The court explained that the two grounds for termination alleged were that J.B.L. was in continuing need of protection or services [CHIPS] and that K.N.L. had failed to assume parental responsibility for J.B.L. The court further explained that the jury would "not be asked to decide if [K.N.L.'s] parental rights should be terminated," but would be asked "to determine whether the grounds for termination alleged in the petition have been proved," and that jurors "should not consider what the final result of this proceeding will be." The court told the prospective jurors that it and the attorneys would be asking questions during voir dire "to find jurors who can be fair in this case, fair and impartial."
¶ 3 During voir dire, counsel for the County reiterated that the "role of the jury" in the case was "not to decide on whether termination of parental rights should occur but ... to decide whether or not the facts are present to support that." Counsel explained that jurors would be "fact finder[s]," and all prospective jurors appeared to understand when he asked if they understood that their role was "to determine whether certain things are true." Counsel for K.N.L. told prospective jurors that it would be their "duty to determine the facts of the case: what is true, what is not true, what is a strong fact, and what is a weak fact."
¶ 4 As voir dire proceeded, various prospective jurors were excused by the circuit court for cause. The court asked prospective Juror B., one of the new prospective jurors who had been present in the courtroom but now replaced one of the prospective jurors who had been excused, if she would have responded to any of the questions previously posed to the prospective jurors. Prospective Juror B. indicated that "to me this case has something to do with either child neglect or child abuse, and I can't handle that. Sorry. I was a neglected and abused child as a kid, and I have no use for a parent-." The court interrupted, stating that it appreciated her honesty and "[s]ometimes a case does hit too close to home. And so that's a concern, and it's something I'm glad you brought to my attention." The court then excused prospective Juror B. for cause, without objection from any party.
¶ 5 Counsel for K.N.L. continued with questioning of prospective jurors. Following up on the comments by prospective Juror B., counsel continued:
So Ms. [B.] had some very strong opinions, and she indicated that she had no use for parents who might be involved in a case that dealt with neglect or abuse. So my question to you is is there anyone else on the panel who feels similarly, maybe not quite as strong, but feels similarly? If so I'd like you to raise your hand."
Prospective Juror P. responded, "I do." Counsel for K.N.L. addressed prospective Juror S., who also had responded:
[Counsel for K.N.L. ]: [T]his case involves an allegation of neglect. And then there was a Court order put in place, and there were things put in place to help her.
And it's going to be your ... job to determine whether the Department made reasonable efforts ... and whether or not she's done her conditions or can do them in the next nine months, okay?
So knowing that this started out with an allegation of neglect in this case, ... [d]oes that cause you concern, Mr. [S.], about your ability to be a juror in this case?
Juror [S. ]: An allegation isn't proof. You have to prove it.
[Counsel for K.N.L. ]: Well, we're not going to be proving whether or not neglect happened. Let's say you have to presume neglect happened in the past. Is that going to create a problem for you deciding the facts?
Juror [S. ]: Yeah.
[Counsel for K.N.L. ]: Why is that?
Juror [S. ]: Nobody should neglect-
....
[Counsel for K.N.L. ]: ... I don't want your reasoning. I guess what I want to know is this. If in the course of this case you learn that there was previously a finding of neglect, and you learn about the conditions that [K.N.L.] has to do, and you hear competing testimony about those conditions and competing testimony about whether or not the Department made reasonable efforts to help her, okay; and the judge tells you to decide this case on the law and not to let prejudice enter into your decision, will you be able to set your feelings aside and follow the judge's instructions?
Juror [S. ]: Yeah.
[Counsel for K.N.L. ]: Was there anyone else.... Ms. [J.]. So you've heard my conversation with Mr. [S.]. And I guess we'll just kind of cut to the end of the chase. Assuming all of the things I told him in those questions, whatever feelings you have, are you going to be able to set those aside and decide the case according to the law that the judge instructs you on, or do you have concerns that your feelings or your beliefs will interfere?
Juror [J. ]: I think my feelings will interfere with the type of case that's involved.
[Counsel for K.N.L. ]: Okay. I'm not going to ask you to share your feelings. When you say that you believe your feelings will interfere, if you had to indicate the strength of that opinion between one and ten, where one is they'll interfere but not very much to ten where they will interfere a lot, I won't be able to do my job, what number would you give it as you sit here today?
Juror [J. ]: I'm sorry. Probably a ten.
[Counsel for K.N.L. ]: Was there anybody else....? ... Mr. [Z.] ... You heard my conversation with Mr. [S.] and now Ms. [J.]. I don't want to have people's feelings out all over the jury. What I do want to know is this: Assuming the premise or the facts that I talked about in my prior questions, do you have concerns about your ability to perform your duty as a jury here in a case of this sort?
Juror [Z. ]: No concerns.
[Counsel for K.N.L. ]: ... Mr. [P.] You heard my exchange about how this case started out as a neglect issue. And now the questions that you're going to answer are a little bit different, but it started out that way. And you've raised your hand. So I'm asking you whether or not you believe you'll be able to follow the instructions of the judge and answer, you know, perform your duty as a juror. Do you believe you will? Or do you have concerns?
Juror [P. ]: I have concerns.
[Counsel for K.N.L. ]: All right. Like I asked Ms. [J.], I don't want you to share with me the exact nature of your concerns just yet. But if you had to give the strength of those concerns, a number between one and ten, where one was your concern was very small and ten is your concern that it might affect your ability to be a juror is very strong, what number would you assign to your concern as you sit here today with the information you have as of now?
Juror [P. ]: A high ten.
[Counsel for K.N.L. ]: ... Your Honor, I would move for Ms. [J.] and Mr. [P.] [to be struck] for cause.
¶ 6 Before deciding the motion, the circuit court permitted counsel for the county to question prospective jurors.
[Counsel for County ]: So, Ms. [J.], you said that you assigned that number ten.... Was your answer of the number ten based on your feelings?
Juror [J. ]: Yes.
[Counsel for County ]: Now, if the judge were to instruct you to set aside your feelings about an issue and decide the case based on the facts that you hear in court and the evidence ... and the law that the judge instructs you on, do you think you could still do that?
Juror [J. ]: Probably.
[Counsel for County ]: Okay. So even though you have strong feelings, you can set those feelings aside and decide the case based on the law and the facts of the case?
Juror [J. ]: By the facts that would be presented, right, by witnesses.
[Counsel for K.N.L. ]: I'm sorry, Your Honor, I can't hear the juror.
[Court ]: She said on the facts that would be presented, yes. Is that correct?
Juror [J. ]: Yes.
[Counsel for County ]: And you would apply the law that the judge gives you?
Juror [J. ]: Yes.
[Counsel for County ]: And instructs you on.
Juror [J. ]: Mm-hmm.
[Counsel for County ]: You have to answer-
Juror [J. ]: Yes.
[Counsel for County ]: Okay. And then, Mr. [P.], same questions to you. You have strong feelings about this.
Juror [P. ] Yes I do.
[Court ]: And do you think you could still set those feelings aside and follow the instructions the judge is going to give you, which is to take the facts that come out at trial and then apply the law that she's going to instruct you on to those facts. Do you think you could still do that fairly?
Juror [P. ]: No, I don't think I could.
[Counsel for County ]: That's all the questions I have.
Counsel for K.N.L. then followed up with prospective Juror J.
[Counsel for K.N.L. ]: Ms. [J.], in your day-to-day life when you're making important decisions, does how you feel about a subject enter into your analysis of what you're going to do or what you're going to decide?
Juror [J. ]: Not all the time, but occasionally I have a gut feeling that am I making the right decision.
[Counsel for K.N.L. ]: Now, you've promised basically the district attorney, all of us here that despite what you've described as strong feelings that you're going to be able to set those aside when you make your decision. So my question to you is this:.... Are you certain that you will be able to set your strong feelings aside and not have them overcome your reason or influence your reason as you make your decision as a juror?
Juror [J. ]: No. I said I'd listen to the witnesses and judge by what they say, not how I feel about child abuse . I'd listen to all the witnesses and their testimony and judge by that.
(Emphasis added.)
¶ 7 Counsel for K.N.L. then again moved to have the circuit court strike both prospective Jurors P. and J. for cause. After a sidebar, the court struck prospective Juror P. for cause but did not strike prospective Juror J. The attorneys subsequently exercised their peremptory challenges, and counsel for K.N.L. used her first peremptory challenge to strike prospective Juror J. Thus, prospective Juror J. did not sit on K.N.L.'s jury but was dismissed with the other nonselected prospective jurors.
¶ 8 Following trial, the jury found that both grounds existed to terminate K.N.L.'s parental rights, and the court later terminated those rights. As part of K.N.L.'s appeal, this matter was remanded back to the circuit court for a hearing to determine if trial counsel performed ineffectively. At this evidentiary hearing, K.N.L. focused the questioning of her trial counsel on the fact that counsel was not aware at the time of K.N.L.'s trial of the case of State v. Lindell , 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223.[2]
¶ 9 In its ruling, the circuit court explained that it believed prospective Juror J. had been "rehabilitated through the questioning" whereas prospective Juror P. had not been, and that is why prospective Juror P. was struck for cause but prospective Juror J. had not been struck. The court recapped the voir dire exchange between the two attorneys and prospective Juror J. and stated that prospective Juror J. was "not saying that she's ruled by these feelings that she has, that occasionally it happens." The court expressed that prospective Juror J. ultimately "was clearly indicating that she would follow the law, that she would listen to the witnesses and she would set her feelings aside." The court added:
And I think it's significant as well that the juror mentioned child abuse as opposed to neglect because this is a neglect case. This wasn't a child abuse case. And [counsel for K.N.L.] did go over that with the jury at some point I think before these questions were asked, but the juror's focus was on abuse, and this wasn't an abuse case. This is a neglect case, and I think that that makes a difference as well because the strong feelings were related to child abuse, not to neglect.
And so ... that was my feeling at the time of the trial, which is why I didn't grant the motion to strike, that Juror J. could serve as a disinterested juror and base her decision on the facts and the law that were given by me.
....
And I think that in this particular case, this was a very reasonable juror who was sincerely willing to set aside [her] own opinions....
¶ 10 The court recognized that under established case law "there are more than just the juror's words that are important, for example, the manner in which a juror says the words, and this is a situation where I felt very strongly that Juror J. was very sincere." The court granted the motion to strike prospective Juror P. because the court "didn't feel that juror was rehabilitated or able to be rehabilitated," but denied the motion to strike prospective Juror J. because the court "felt that that juror was very sincere in being able to set her feelings aside and sit impartially on the jury." The court added that prospective Juror J. "told us she was biased, but it was about child abuse, not neglect, but she also said she would judge the case based on the witnesses and the law, and I believed her." The court again noted that prospective Juror J. "specified abuse" not neglect, adding "I don't know anyone who wouldn't have a strong anti-child abuse position, who wouldn't have a visceral reaction to the thought of child abuse."
¶ 11 In addition to concluding that prospective Juror J. was not biased, the court also determined that even if prospective Juror J. was biased, its then-error in not striking her for cause was harmless because counsel for K.N.L. struck her and she did not end up sitting on the jury. K.N.L. appeals.
Discussion
¶ 12 K.N.L. asserts prospective Juror J. was biased and thus the circuit court erred in declining to strike her for cause. She also claims counsel performed ineffectively. We disagree with K.N.L. on all fronts, and further conclude that even if the court erred in finding prospective Juror J. was not biased and declining to strike her for cause, such error was harmless.
Bias
¶ 13 "As a general principle, a criminal defendant has a right to a fair trial by a panel of impartial jurors." State v. Jimmie R.R. , 2000 WI App 5, ¶ 14, 232 Wis. 2d 138, 606 N.W.2d 196 (1999). An impartial juror is one that is "indifferent and capable of basing his or her verdict upon the evidence developed at trial." State v. Lepsch , 2017 WI 27, ¶ 21, 374 Wis. 2d 98, 892 N.W.2d 682 (quoting State v. Faucher , 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999) ). We presume prospective jurors to be impartial. State v. Funk , 2011 WI 62, ¶ 31, 335 Wis. 2d 369, 799 N.W.2d 421. "The party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias." Id. In assessing bias, we are to "defer to the trial court's better position to assess the prospective juror's credibility and honesty." Jimmie R.R. , 232 Wis. 2d 138, ¶ 30.
¶ 14 Wisconsin courts recognize three types of juror bias: (1) statutory bias, (2) subjective bias, and (3) objective bias. Faucher , 227 Wis. 2d at 716. K.N.L. contends prospective Juror J. was both subjectively and objectively biased.
¶ 15 A prospective juror's subjective bias "is revealed through the words and the demeanor of the prospective juror." Id. at 717. To determine if a prospective juror exhibited subjective bias, we must inquire as to "whether the record reflects that the juror is a reasonable person who is sincerely willing to set aside any opinion or prior knowledge" he or she might have. State v. Kiernan , 227 Wis. 2d 736, 745, 596 N.W.2d 760 (1999). We have stated:
[I]t is clear that "a prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality." It is not just the juror's words that are important. The manner in which the juror says the words and the body language he or she exhibits while answering speak volumes-volumes that are not transmitted to a reviewing court via the cold record. Our inability to review demeanor and thus assess sincerity is precisely why we leave the determination of subjective bias to the circuit court. Thus, when reviewing a circuit court's decision on subjective bias, we do not focus on particular, isolated words the juror used. Rather, we look at the record as a whole, using a very deferential lens, to determine if it supports the circuit court's conclusion.
State v. Oswald , 2000 WI App 3, ¶ 6, 232 Wis. 2d 103, 606 N.W.2d 238 (1999) (citations omitted). We "will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." Faucher , 227 Wis. 2d at 718.
¶ 16 "[E]xclusion of a juror for objective bias requires a direct, critical, personal connection between the individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror's intractable negative attitude toward the justice system in general." Oswald , 232 Wis. 2d 103, ¶ 8 (emphasis added). A juror is objectively biased if a reasonable person in the juror's position could not set aside his or her prior opinion or knowledge and be impartial. Faucher , 227 Wis. 2d at 718-19. Objective bias presents a mixed question of fact and law. Funk , 335 Wis. 2d 369, ¶ 30. "[A] circuit court's findings regarding the facts and circumstances surrounding voir dire and the case will be upheld unless they are clearly erroneous. Whether those facts fulfill the legal standard of objective bias is a question of law." Id. (alterations in original) (quoting Faucher , 227 Wis. 2d at 720 ). "[W]e will reverse a circuit court's determination in regard to objective bias 'only if as a matter of law a reasonable judge could not have reached such a conclusion.' " Funk , 335 Wis. 2d 369, ¶ 30 (quoting Faucher , 227 Wis. 2d at 720-21 ). Our supreme court has stated:
The circuit court is particularly well-positioned to make a determination of objective bias, and it has special competence in this area. It is intimately familiar with the voir dire proceeding, and is best situated to reflect upon the prospective juror's subjective state of mind which is relevant as well to the determination of objective bias. We therefore give weight to the court's conclusion that a prospective juror is or is not objectively biased.
Lindell , 245 Wis. 2d 689, ¶ 39 (quoting Faucher , 227 Wis. 2d at 720-21 ). For objective bias, there is a "higher standard of review than the clearly erroneous standard but still very deferential to the trial court's conclusions." Oswald , 232 Wis. 2d 103, ¶ 5.
¶ 17 At the post-remand hearing in this case, the circuit court made a clear record as to why it ultimately determined that prospective Juror J. was neither subjectively nor objectively biased. We cannot improve upon it. As the circuit court noted, prospective Juror J.'s strong feelings were related to child abuse , not child neglect, and the case was not about child abuse. Furthermore, prospective Juror J. expressed that she could decide the case based upon the facts presented and the law as instructed by the court. The court, having directly observed prospective Juror J.'s demeanor, tone and inflection of voice, etc., found her to be sincere and believable in this regard. Neither K.N.L. nor our own review of the record provides us with a basis to question that. The court did not strike prospective Juror J. because the court found that she was not biased, and we find no error in this.
¶ 18 Specifically as to objective bias, we believe a reasonable person in prospective Juror J.'s position could have remained fair and impartial, particularly in light of the fact that she indicated that her strong, though unspecified, feelings were in relation to child abuse, as opposed to child neglect, and child abuse was not an issue in the case. Moreover, unlike with prospective Juror B., who expressed that she "can't handle" a case related to "child neglect or child abuse" and had "no use for a parent" who abused or neglected his/her child because she herself had been "a neglected and abused child," the record identifies no "direct, critical, personal connection between [prospective Juror J.] and crucial evidence or a dispositive issue in the case," which is "require[d]" in order to "exclu[de] ... a juror for objective bias." See id. , ¶ 8.
Ineffective Assistance
¶ 19 K.N.L. also claims she received ineffective assistance from trial counsel because counsel "waiv[ed] a challenge to the court's refusal to strike a juror for cause without knowing the law" and "fail[ed] to object that the Lindell rule should not apply in TPR cases." K.N.L.'s assertions that counsel was deficient and that she was prejudiced by the deficiency are both conclusory and undeveloped. Because we need not address conclusory and undeveloped arguments, on that basis alone she fails to establish counsel was ineffective. See Associates Fin. Servs. Co. of Wis., Inc. v. Brown , 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56. Furthermore, her claim of deficiency is nonsensical. She faults counsel for being "completely unaware of the Lindell rule when [counsel] struck" prospective Juror J., but also insists in her brief that the Lindell case does not apply to TPR cases like hers. Additionally, she fails to tell us what "rule" does apply that counsel did not follow, if the "Lindell rule" does not apply.
¶ 20 To establish ineffective assistance of counsel, K.N.L. must show that her counsel's performance was both deficient and prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). If she fails to prove one prong, we need not address the other. Id . at 697. To prove deficient performance, she must establish that counsel's conduct fell below an objective standard of reasonableness. See State v. Thiel , 2003 WI 111, ¶¶ 18-19, 264 Wis. 2d 571, 665 N.W.2d 305. There is a strong presumption that a parent received adequate assistance and that counsel's decisions were justified in the exercise of reasonable professional judgment. See State v. Domke , 2011 WI 95, ¶ 36, 337 Wis. 2d 268, 805 N.W.2d 364 ; State v. Kimbrough , 2001 WI App 138, ¶¶ 31-35, 246 Wis. 2d 648, 630 N.W.2d 752.
¶ 21 As noted earlier, K.N.L.'s trial counsel did object to prospective Juror J. serving on the jury and moved the circuit court to strike her for cause. Then, when the court did not strike her, counsel used one of her peremptory challenges to strike her to ensure prospective Juror J. did not sit on K.N.L.'s jury. The upshot of what K.N.L. now appears to be arguing is that after the court denied counsel's motion to strike prospective Juror J. for cause, counsel should not have struck prospective Juror J., but should have left her on the jury-this prospective juror whom she (incorrectly) insists was biased. Such a move would have provided much more fertile ground for a claim of deficient performance by counsel. Counsel made a reasonable strategic move in striking prospective Juror J. after the court declined to do so, and counsel did not perform deficiently.[3] Furthermore, counsel is not deficient for "failing to 'object and argue a point of law' that is 'unclear' " or unsettled, State v. Morales-Pedrosa , 2016 WI App 38, ¶ 16, 369 Wis. 2d 75, 879 N.W.2d 772 (unclear); State v. McMahon , 186 Wis. 2d 68, 84, 519 N.W.2d 621 (Ct. App. 1994) (unsettled), and here it is not at all clear or settled that Lindell does not apply to TPR cases.[4]
¶ 22 Because we conclude counsel did not perform deficiently, we need not discuss prejudice. But we will. K.N.L. was not prejudiced by the performance of trial counsel. We first note that in her conclusory assertion that she was prejudiced, she fails to tell us what constitutes prejudice. As we note above, to satisfy the prejudice prong, there must be a "reasonable probability" that there would have been a different result if the alleged error had not been made by counsel. In this case, prospective Juror J. never made it onto the jury and we see no reasonable probability of a better result for her if counsel had not struck her and instead let her serve on the jury (assuming the County did not strike her). See also State v. Lepsch , 2017 WI 27, ¶ 58, 374 Wis. 2d 98, 892 N.W.2d 682 (recognizing that prejudice cannot be proven without showing that the exhaustion of peremptory challenges resulted in "a jury that included an objectionable or incompetent member" (quoting State v. Traylor , 170 Wis. 2d 393, 400, 489 N.W.2d 626 (Ct. App. 1992) ) ). Relatedly, as we have concluded, prospective Juror J. was not biased. So, if counsel had let prospective Juror J. sit on the jury, presuming the County did not use one of its preemptory challenges to strike her, any appeal on the basis that prospective Juror J. was biased would have fallen flat.
Harmless Error
¶ 23 WISCONSIN STAT. § 805.18(2) provides in relevant part:
No judgment shall be reversed ... or new trial granted in any action or proceeding on the ground of selection ... of the jury , ... or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse ... the judgment, or to secure a new trial.
(Emphasis added.) This harmless error rule applies in TPR cases, see Evelyn C.R. v. Tykila S. , 2001 WI 110, ¶ 28, 246 Wis. 2d 1, 629 N.W.2d 768, and as our supreme court noted in Lindell , "specifically mentions errors in the selection of a jury," Lindell , 245 Wis. 2d 689, ¶ 70. The Evelyn C.R. court expounded on this statute:
For an error to "affect the substantial rights" of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. A reasonable possibility of a different outcome is a possibility sufficient to undermine confidence in the outcome. If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless.
Evelyn C.R. , 246 Wis. 2d 1, ¶ 28 (citations omitted).
¶ 24 At the post-remand hearing, the circuit court concluded that even if prospective Juror J. was biased and it thus had erred in not striking her from the jury for cause, the error was harmless because prospective Juror J. never ended up sitting on the jury. In her brief-in-chief, K.N.L. only makes the conclusory assertion that because there were two dissenting jurors on each of the counts for termination of her rights, "a claim of harmless error is misplaced." Again, we do not consider conclusory assertions and undeveloped arguments. Associates Fin. Servs. , 258 Wis. 2d 915, ¶ 4 n.3. She then cites to State v. Ramos , 211 Wis. 2d 12, 564 N.W.2d 328 (1997), a case which was thoroughly repudiated and ultimately overruled by State v. Lindell , 245 Wis. 2d 689, ¶¶ 5, 52. In its response brief, the County provides a well-stated, three-page argument that even if the court erred in not striking prospective Juror J. for cause, the error was harmless because neither prospective Juror J. nor any other biased juror ended up sitting on the jury. K.N.L. has provided us with no reply brief and thus has failed to refute the County's argument in this regard. By failing to refute the argument, K.N.L. concedes it. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).
¶ 25 We note that K.N.L. never suggests that had she not had to use one of her peremptory challenges on prospective Juror J., she would have instead used that challenge to strike another prospective juror who ended up sitting on the jury and voting in favor of each ground for termination. Furthermore, there is absolutely no suggestion that any juror that actually served on K.N.L.'s jury was a concern, or any suggestion by K.N.L. as to what she would have done with an additional peremptory strike if the court had struck prospective Juror J. for cause, or how that in any way might have affected the verdict. There is no reason to believe that the jury that found the two grounds for terminating K.N.L.'s parental rights was not completely fair and impartial.
¶ 26 In Lindell , our supreme court noted that in United States v. Martinez-Salazar , 528 U.S. 304, 315-16 (2000), "all nine members of the [United States Supreme] Court expressed the notion that one of the reasons for peremptory challenges is to correct errors in failing to strike for cause." Lindell , 245 Wis. 2d 689, ¶ 89 n.12. The Lindell court also looked favorably toward the following language from an earlier decision of ours:
There is no constitutional right to peremptory challenges; there is only a constitutional right to an impartial jury. Ross v. Oklahoma , 487 U.S. 81, 85, 88 (1988). Any claim that a jury is not impartial must focus not on the jurors who were removed by peremptory challenges but on the jury that actually sat in the case. See id. at 85-86. Where there is no showing that any of the actual jurors were biased, it would be speculative for a court to conclude that the jury would have been fairer if counsel had been allowed to preserve peremptory challenges on other, unspecified members of the jury venire. Moreover, there would be no stopping point if the deprivation of such speculative benefit, standing by itself, could establish prejudice.
Lindell , 245 Wis. 2d 689, ¶ 81 (quoting Traylor , 170 Wis. 2d at 400 ). The Lindell court then noted that in Traylor we "referred to 'harmless error' and then said:
[T]he state argues that even if counsel was ineffective, this performance did not prejudice the defendant.... The reason for this is that, under old and never overruled Wisconsin law, Traylor cannot prove prejudice unless he can show that the exhaustion of peremptory challenges left him with a jury that included an objectionable or incompetent member. Pool v. Milwaukee Mechanics' Ins. Co. , 94 Wis. 447, 453, 69 N.W. 65 (1896). Wisconsin's longstanding rule is that where a fair and impartial jury is impaneled, there is no basis for concluding that a defendant was wrongly required to use peremptory challenges. See Carthaus v. State , 78 Wis. 560, 568, 47 N.W. 629 (1891).
Lindell , 245 Wis. 2d 689, ¶ 81 (quoting Traylor , 170 Wis. 2d at 400 ).
¶ 27 K.N.L. insists that because Lindell was a criminal case, it should not and does not apply in TPR cases like hers. However, as noted, our supreme court in Evelyn -a TPR case like this one-applied the harmless error rule of WIS. STAT. § 805.18 and in Lindell expressed that "[t]he substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error." Lindell , 245 Wis. 2d 689, ¶ 113. We see no reason why this statement would not provide compelling guidance in considering whether "a single peremptory strike to correct a circuit court error" also does not affect the substantial rights of a party in a TPR case. Again, K.N.L. makes no assertion that she did not have a completely fair and impartial jury decide her case. Fatal to K.N.L.'s appeal of course is the additional fact, as stated earlier, that she never tells us what law we should apply in the TPR context if we did not look to Lindell for guidance.
¶ 28 As our supreme court stated in Evelyn -again, a TPR case like this one-"[f]or an error to 'affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." Evelyn C.R. , 246 Wis. 2d 1, ¶ 28. "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.' If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless." Id. (citation omitted). Here, even if we did not consider Lindell , and even if prospective Juror J. should have been struck by the circuit court for cause, there is no reason to believe that doing so would have made any difference to the outcome of this case. K.N.L. makes no suggestion that the County did not fully and properly establish the elements for either the CHIPS ground or the failure to assume parental responsibility ground, and as the County points out, "[n]o biased juror sat on K.N.L.'s jury." We see no reasonable possibility that the result in this case would have been any different if the circuit court, instead of K.N.L., had struck prospective Juror J.
¶ 29 Neither the circuit court nor trial counsel erred in this case. We affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

State v. Lindell , 2001 WI 108, ¶ 5, 245 Wis. 2d 689, 629 N.W.2d 223, is a decision by our supreme court in a criminal case which overruled the supreme court's decision in the criminal case of State v. Ramos , 211 Wis. 2d 12, 564 N.W.2d 328 (1997). Lindell held that the circuit court's failure in that case to strike a biased juror was harmless error under Wis. Stat. § 805.18 because "[t]he substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error." Lindell , 245 Wis. 2d 689, ¶ 113. The court also expressed that its decision "requires a defendant to make a conscious choice between exercising a peremptory challenge or waiting for a Sixth Amendment challenge after conviction." Id. , ¶ 118.

At the post-remand hearing, the circuit court detailed the "phenomenal job" K.N.L.'s trial counsel did on the case. Based upon our review of the record, we agree with this assessment.

As the circuit court noted at the post-remand hearing, K.N.L.'s contention "that Lindell should not be applied to TPR cases and that [her trial counsel] was ineffective for not arguing that position" is "obviously an issue for the Court of Appeals. There is ... no case law that supports that position, so, I mean, that's an argument that's just very obscure or speculative."